## SPEARS v. STONE & WEBSTER ENGINEERING CORPORATION. *
### No. 1473.

Court of Appeal of Louisiana. First Circuit.
May 14, 1935.

M. R. Stewart, of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellee.

ELLIOTT, Judge.

June B. Spears, employed by Stone & Webster Engineering Corporation as a steel worker, alleges that on or about August 12, 1934, while engaged in its work pulling a wrench, his foot slipped throwing him forward, and that in falling, his left hand struck on a projecting steel bolt. That the bones in his hand were fractured as a result of the fall, producing in him a permanent total disability to do work of any reasonable kind. That Stone & Webster Engineering Corporation took immediate notice of said accident and paid him compensation for one week and one day, in

---

*Decree amended and rehearing denied 161 So. 905.

amount $24, but have refused to pay him any more. He brought suit against them claiming compensation at the rate of $20 per week for a period of 400 weeks.

The defendant, answering, denies in the first part of its answer that plaintiff had been injured, but in a later part it alleges an existing injury to his left hand, but claims that it was not sustained while plaintiff was engaged in its work, but in a fight or brawl in which he engaged on or about the night of August 13, 1934, or in the early morning of August 14, 1934. That after sustaining said injury in a fight or brawl he returned to its place and claimed that it had been sustained while engaged in its work. That acting on said complaint, which was at the time believed, it paid him compensation for a week and a day, when, learning the truth, it refused to pay him any more. It denies that plaintiff is entitled to any compensation. It prays that his demand be rejected and that it have judgment in reconvention against him for the $24 paid in error.

There was judgment in favor of the defendant rejecting plaintiff's demand, but defendant's demand in reconvention was not acted on.

The plaintiff has appealed.

The defendant answering plaintiff's appeal prays that the judgment of the lower court rejecting his demand be affirmed, but to the extent that its demand in reconvention was not acted on, it prays that the judgment be amended and that it have judgment against plaintiff in reconvention for the $24.

The petition, in addition to the hand injury, alleges injury to plaintiff's right leg. The lower court in its reasons for judgment does not refer to this alleged leg injury, and the evidence on the subject indicates that even if received, as to which we express no opinion, it did not disable the plaintiff and was not serious enough to support any claim for compensation on that account. In acting on plaintiff's claim for compensation, we consider only the injury to his hand; the alleged injury to his leg is not given any further notice. The existing injury to plaintiff's left hand is serious and has permanently unfitted him for further work in his trade as steel worker or any other manual labor which requires the strength of both hands.

The district judge in rejecting plaintiff's demand entered into the case fully, setting forth the facts which influenced his conclusion. A number of physicians were called as experts to testify concerning the existing injury to plaintiff's left hand. There is no serious conflict between them concerning the present condition of his hand, although there is some difference between them as to the extent of the injury, based on their interpretation of X-rays made of the injured member. All agree that the X-rays show a fracture of the metacarpal bone of the thumb forming part of the hand, next to the wrist; that part of a bone has been broken off, but some of them testify that the X-ray also shows a break in one of the wrist bones called the trapezium, and a bone displacement near the trapezoid, which others were unable to see. It appears to us that a preponderance of the evidence on this subject is to the effect that not only has the metacarpal bone of the thumb been fractured, but in addition a portion of the bone has been broken off; this detached fragment has pushed another bone out of its place and a small bone connecting the hand with the wrist has been broken.

The serious question in the case is whether plaintiff was injured as the result of a fall while engaged in defendant's work on the evening of August 13, 1934, at about the hour of 6:10 or 6:15 p. m., or did he sustain his injury as the result of striking a man in the mouth during the early morning of the next day, August 14, 1934?

Plaintiff's testimony is substantially as follows: Along about 6:10 or 6:15 p. m. during the evening of August 13, 1934, while standing on the slant of a steel kiln which he was engaged in constructing, pulling on a wrench, the wrench slipped and he fell and hit a bolt and nut he had put on it in the big part of his hand right there. The evidence shows that it had been raining and that the rain had interfered with the work. It was further shown that plaintiff was wearing a glove and that the skin on his hand was not broken. We think it may be safely taken that the glove saved the skin on his hand from being broken. The plaintiff testifies that after falling and injuring his hand he continued to work 10 or 15 minutes. In working he put on the nut with his right hand, holding the wrench with his left; then pulled on the lever of the wrench with his left hand, assisted by his right hand.

The medical testimony differs as to the effect that the broken bones in his hand had on his ability to continue working 10 or 15 minutes. Some of the physicians didn't think he could have continued working for that length of time, but we think the preponderance of the testimony is to the effect that he could have continued for the time he claimed,

using his right hand to assist his left. That the injury did not at first cause him serious pain, but severe pain resulted after a couple of hours. He testifies that after 10 or 15 minutes work, following his fall and injury, he came down off the kiln and went inside of it where there were three of his co-workers, not counting Schriver, the foreman; that he told the foreman in the presence of the other employees present that he wished to quit work; that he had rather lose the time than work a night like that; that he had fallen and hurt himself. Cross-examined he repeated his statement several times, telling how he fell and hurt his hand; that he continued to work for a short time then came down off the kiln, went inside of it, and said to the foreman in presence of the others that he had fallen and hurt himself and did not want to work in the rain. He was asked by the court:

"Q. Did you quit because you were hurt so bad you could not work any longer, or because it was raining and you were afraid of working in the rain? A. No Sir, I did not quit because I was hurt so bad, because it didn't really hurt and I didn't think I was hurt very much."

The plaintiff testified that J. E. Bridges was one of the men present at the time.

Bridges called as a witness testified that he was working on the inside of the kiln and that plaintiff was working on the outside; that plaintiff came down off the kiln and came inside, and addressing him in the presence of Schriver and two other workmen, Decuir and O'Brien, said: "I can't work up here in this rain. I have fell and hurt my hand and leg now. I would rather lose the time than work in this kind of weather." Bridges it seems worked putting the iron bolts up through the inside of the metal covering of the kiln and plaintiff worked on the outside putting nuts on them and screwed them down, using a wrench. According to Bridges the others present must have heard what plaintiff said to Schriver.

Bridges states that Schriver, the foreman, did not want them to quit at first, so plaintiff went back to work on top of the kiln and worked for a time which he estimates at from 5 to 15 minutes; that plaintiff then came inside the kiln again and they both quit, got into an automobile, and went into town, meaning Lake Charles; the distance is not definitely stated, but following the roadway it must have been between three and five miles. They rode in an automobile driven by another man; both plaintiff and Bridges say they did not know the name of this man who drove them into town, and the party was not produced as a witness on the trial. That he noticed while they were on their way to town that plaintiff's left hand was hurt and swollen. In giving his testimony Bridges stated that the accident occurred on Thursday or Friday evening. In that respect he was mistaken; it occurred on Monday evening. The fact that the witness was mistaken as to the day of the week would have a serious effect on his testimony in view of the attack made on it, were it not that we are satisfied from his testimony, supported by the evidence of other witnesses, including Schriver, that he was present and that it occurred on Monday evening August 13, 1934, at about 6:10 or 6:15 p. m.

Talford Decuir was engaged on the same work at the same time as the plaintiff. He testified that he saw plaintiff slip and fall forward on the kiln. We copy a question asked him and his answer thereto:

"Q. When he got up what did he do? A. He caught his hand that way and cursed and I asked him—I happened to be about 10 or 15 feet from him when he got up—He slipped down right that way on the steel and got up and caught his hand that way, and that is when he cursed and I asked him if he was hurt and he said yes. I slipped ————"

In another place this witness, referring to what Mr. Spears said after he had fallen and came inside the kiln, said that Mr. Spears came in the kiln about 10 or 15 minutes after he got hurt. That he (Decuir) was inside with Mr. Bridges and Mr. Schriver, and Spears told Mr. Schriver that he had just fallen and felt unable to work, that he had just hurt his hand and leg and did not like working in that kind of weather; he had rather lose the time than go ahead and work.

Decuir further testified that plaintiff did not slip over 10 or 12 inches; his foot went back and he went right down on the iron and complained of hurting his left thumb and right leg. Another workman named Duke O'Brien, it seems, was not inside the kiln. This man O'Brien was not produced. It seems he had left the work and his whereabouts at the time of the trial were unknown.

Plaintiff and Bridges both say that after leaving the plant they got into an automobile driven by a man they did not know and went to town, meaning Lake Charles. There they went to a restaurant kept by Mrs. Fitzgerald, in which was employed another woman named Mrs. Bertrand, and that Mrs. Bertrand gave plaintiff hot water in which to bathe his hand; that it had then swelled up.

Mrs. Bertrand, called as a witness, corroborates the plaintiff and Bridges on this subject. She testifies that on the evening of August 13, 1934, a little after dark plaintiff came to the restaurant with Bridges; that plaintiff's left hand was hurt and swelled up; that she prepared some hot water and gave it to him; that he bathed his hand in it. She is positive in her testimony that it occurred just after dark. She admits that she could not recall the day of the month, but remembered the occasion, and that it was on or about the time mentioned.

Mrs. Fitzgerald, owner of the restaurant, recalled the matter and the date August 13, 1934, just after dark. She fixed the date by a charge made by her at the time against Spears. She testifies that she saw his left hand and that it was hurt. That Mrs. Bertrand gave him some hot water in which to bathe it, and she put some salt in it for him.

After leaving the restaurant plaintiff and Bridges separated. Plaintiff says that when he was going up the street on his way to his rooming house he met a man named Holmes. The hour of meeting with Holmes was not definitely fixed by the testimony, but it must have been about 7 o'clock p. m.

Holmes called as a witness says: "I met him one afternoon a little after night and he was wet. I talked to him and he had a hurt hand." He says in another place that plaintiff's hand was swelled up; that he asked him what was the matter and he said he fell. This witness didn't notice which hand was hurt. After meeting Holmes, plaintiff went to his rooming house and there saw Mr. and Mrs. Decker. Mr. Decker was employed by the defendant. Decker says that plaintiff came to his room on August 13, 1934, at about 7 p. m. and told him that he had slipped and hurt his hand. That he showed him his left hand and it was hurt and swollen. Plaintiff asked him if he could heat some water, upon which Decker says he called his wife and asked her to heat some water for Spears. That his wife did so, brought it in the room, and Spears soaked his hand in it. Decker further says that after plaintiff finished soaking his hand he (Decker) got some iodine and, using the stopper, put some on his hand. That Mrs. Decker then got some cotton and painted his hand thoroughly.

Mrs. Decker testified as to the date and as to the injury to plaintiff's hand substantially as did her husband. Plaintiff then went to his room in the Decker house. Next morning, August 14, 1934, plaintiff struck a man named Clausen. Defendant contends that plaintiff injured his hand in striking Clausen. Its averment is that upon information and belief, plaintiff received the injury of which he complains in a fight or brawl on or about the night of August 13, 1934, or early morning of August 14, 1934, while he was on a pleasure party and at a time when he was not in the employ of defendant.

The fight to which the answer refers is shown by all the testimony to have taken place during the morning of August 14, 1934. It is useless to go into details of the difficulty in which the plaintiff struck Clausen. The plaintiff testifies that he struck only one lick, and that with his right fist, and that in striking he bruised the knuckle of the second finger on his right hand. There was some testimony on the trial supporting his statement that the knuckle of the second finger of his right hand showed signs of a previous bruising. Several witnesses testified that plaintiff, in striking Clausen, struck only once and that, with his right fist, knocking out two of Clausen's teeth. All the witnesses agreed that Clausen was larger and taller than plaintiff. Some of the witnesses say that plaintiff and Clausen fought and struggled together; others, and we think the preponderance, say there was no struggle.

An objection to defendant's theory that plaintiff injured his hand in striking Clausen is the fact that he testified without contradiction that he was a right-handed man, which means that he uses his right hand as men do when they are right-handed. Nothing indicates that plaintiff may have been ambidextrous with ability to strike with both fists.

Another objection is that a blow with his clenched left fist could hardly have resulted in a fracture of the metacarpal bone and the other bone injury and bone displacement near the wrist shown by the X-rays, because the force of the blow would have been received on the knuckles and the injury, if any, would likely have been in that locality.

The credibility of two of plaintiff's witnesses is attacked. The testimony shows that Decker had been arrested several times and had served a term in the penitentiary. The witness Holmes admitted that he had been charged with offenses a few times, but claimed that he had never been convicted. It was not shown that any of the witnesses called by the plaintiff were related to or connected with him. It is quite likely that they were friendly to him and his cause.

Mr. Schriver, foreman at the kiln, denies that plaintiff complained to him on the evening of August 13, 1934, that he had fallen on

the kiln and hurt his hand, and denies that he knew that his hand had been hurt until next morning when plaintiff came to his house and claimed that he had hurt himself the previous evening while working on the kiln. Schriver in making these statements contradicts plaintiff and Bridges and Decuir. We do not see why Schriver's testimony should overcome the three opposed to him.

C. B. Brailey, safety director and supervisor of employment, in the employ of defendant, testified that plaintiff came to him on the morning of August 14, 1934, and complained that he had hurt his hand the previous evening while engaged in defendant's work. That he looked at his hand, and his thumb was swollen considerably. That he put him on compensation. Speaking of that matter he said: "At that time I didn't have what I considered sufficient proof that there was any other reason than the one he gave, that it was the cause of the injury." But under the law, no compensation was due until the end of the week, and presumably none was paid earlier. The witnesses Bridges, Decuir, and Decker were defendant's employees, easily available, and it seems reasonable that before paying, defendant made some investigation and that payment was made afterwards.

There is in fact no support for defendant's theory that plaintiff injured his hand in striking Clausen, except and unless the testimony of the plaintiff, Bridges, and Decuir, supported by Mrs. Bertrand, Mrs. Fitzgerald, Holmes, Mr. and Mrs. Decker is put aside as unbelievable and untrue.

The reasons of the lower court for rejecting plaintiff's demand have received our careful consideration. We do not question the statement made by the lower court, but accept it without qualification, but we differ with it as to the proper deduction to be made from the conduct which the court ascribes to the plaintiff while looking at his right hand. Plaintiff's counsel asked him to show the court both his hands. The judge of the lower court, speaking of the matter, says that plaintiff put them open before him for examination; that without noticing the error, he took hold of plaintiff's right thumb and bent it downward, asking plaintiff if it hurt, to which he replied, "No." He then bent plaintiff's right thumb inward toward his fingers, in a manner in which Dr. Kushner testified that plaintiff's left thumb could not be bent; that plaintiff, giving evidence of much pain, jerked his right hand away. The judge, realizing that he had been examining the normal right hand and that plaintiff had flinched as though in

pain when the right thumb was manipulated, asked plaintiff to explain his most unusual conduct. That he was unable to do it, and that the judge looked on plaintiff's conduct as strongly indicating an attempt to deceive, which had most unfavorably impressed him with the testimony of the plaintiff as a whole.

The note of testimony refers to what we take to be the same incident dictated by the court and a statement made by the plaintiff. We copy from the note of testimony: "Upon request of counsel for plaintiff the court examined plaintiff's right hand. By the Court: When the court easily flexed plaintiff's right thumb, plaintiff flinched and jerked as though in pain, and the court asked what was the reason he did it. Plaintiff answered, 'If I flinched I do not remember anything about it. My right hand is all right. I put my right hand in the position the judge asked me to examine it. My right hand is all right.'"

The immediate answer of the plaintiff seems to us to indicate that his act was prompted by an erroneous conclusion on his part, as to the consequences that might result from the examination of his right hand. His right hand had not been hurt, and the request to put it in-position may have caused him to think that the court, in examining his right hand, was getting a wrong impression. Plaintiff could not hope to better his cause by feigning that the manipulation of the thumb on his right hand pained him, because he well knew that his whole case was based on injury to his left hand.

There was a first-aid station kept on the plant premises within about 500 feet of the place where plaintiff was working; a trained nurse stayed there day and night. One was there almost certainly to the knowledge of the plaintiff, and plaintiff could have gone there and received first-aid treatment immediately after he was hurt, before going into town. The plaintiff testifies, and medical testimony supports the probability of his statement, that he did not at first realize the extent of his injury, and that his hand likely did not commence to pain him in such a way as to press on him the importance of treatment until an hour or more afterwards. We do not feel that the fact that plaintiff did not call at the first-aid station before going to town can overcome the positive testimony that he was injured while working and at the time stated in his testimony.

■ Through hypothetical questions, physicians were asked by both sides to state whether in their opinion under a supposed state of facts, the plaintiff was more likely to have in-

356

jured himself by falling and striking his open hand on a protruding bolt or by striking a man with his fist. Some thought it was more likely that it was done as a result of a fall, while others thought it more likely that it was done by striking a man.

Opinions of the kind on the part of physicians should not have been solicited. They were not experts on that subject. Experts are "persons versed in the knowledge either of a science, and art, or a profession, selected in order to give their opinion on some point or question on which the decision of a cause depends." Code Practice, art. 441.

■ "An expert may also testify to general scientific facts or doctrines which are pertinent to elucidate the facts at issue, but not to general theories which have only a remote and conjectural application to the facts of the case nor in contradiction to positive testimony as to the actual facts." Ruling Case Law, vol. II, subject Experts and Opinion Evidence, § 7, p. 573. For other authors to the same effect, see Jones on Evidence, subject Opinions, §§ 390 and 391, p. 572; Moore on Facts, subject Weight of Evidence, Experts and Opinion, vol. 2, § 1337, p. 1736 et seq.

■ But defendant's theory that plaintiff injured his hand during the morning of August 14, 1934, in striking Clausen falls to the ground unless the testimony of plaintiff, Bridges, and Decuir, that he hurt his left hand during the evening of August 13, 1934, at about 6:10 or 6:15 p. m. as the result of a fall while working on a steel kiln in the service of the defendant, is put aside as untrue. Their testimony to the fact of injury at that time is so well supported that we feel that it must be, and we accordingly accept it, as establishing the fact.

■ We are of the opinion that the judgment rejecting plaintiff's demand is manifestly erroneous. The evidence shows that plaintiff, for lack of education, is not qualified for any kind of work except manual labor, and his injury has permanently disabled him from the pursuit of his occupation as steel worker or any other kind of labor that requires the strength and use of both hands.

He is therefore entitled to compensation for the loss of a hand. The law fixes compensation for the loss of a hand at 65 per cent. of his weekly wage for a period of 150 weeks, according to his daily rate of pay. The evidence shows that plaintiff incurred an expense of $17 for medical treatment of his hand. Compensation for a week and one day has been paid.

For these reasons the judgment appealed from is annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that the plaintiff June B. Spears have judgment for compensation against Stone & Webster Engineering Corporation, fixed at 65 per cent. of a daily wage of $3 for a period of 150 weeks. Compensation to commence August 13, 1934; credit is to be given for one week and one day paid, and is to be thence paid weekly for the time mentioned. Each weekly amount due is to bear interest at the rate of 5 per cent. per annum from the time it was due until paid.

There is further judgment in favor of the plaintiff Spears and against the defendant Stone & Webster Engineering Corporation for $17 on account of medical expenses incurred.

Defendant-appellee is to pay the cost in both courts.