Emory M. SHOFNER, Appellant,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

No. 18811.

United States Court of Appeals
Fifth Circuit.

March 9, 1962.

Philip Mansour, John C. Webb, Greenville, Miss., for appellant.

Roy D. Campbell, Jr., W. C. Keady, Greenville, Miss., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant, Lieutenant Colonel Emory M. Shofner, plaintiff below, brought this action against the Illinois Central Railroad Company, appellee, defendant below, to recover damages for personal injuries (and automobile damage) received by him when he drove his automobile into the side of a freight train engaged in a switching movement, which had made a momentary stop with one of the boxcars in a string of thirty-four standing across the southbound lane of Mississippi State Highway Number One a few miles from Greenville, Mississippi. Appellant was driving south along a one-way, two-lane concrete highway 24 feet wide with bituminous shoulders ten feet wide on each side of the two parallel lanes, and a fourteen foot neutral strip separating this southbound segment from a like segment for north bound traffic. The switching engine had drawn the cut of cars across the highway, stopping with about the twenty-fifth car straddling the southbound half of the highway. The purpose was to pull the end of the cut of cars clear of a switch track into which some of the cars, upon a backward movement, were to be pushed. Appellant admits that the movement was a necessary and legitimate one, and that the stopping of the car so as to block the crossing did not constitute negligence on the part of the Railroad.

Finding from practically undisputed evidence that appellant had, before leaving the Greenville Air Base, taken three or four highballs and had engaged in a card game thereafter until about 2:15 A.M.; that he had driven his car to Highway No. 1 and had turned south towards the City of Greenville and had driven at a speed of forty-five miles per hour or less a distance of about one mile on the concrete highway; that appellant had not seen any of the several prominent landmarks along the route, had not seen the Highway Department reflector type warning signs about seven hundred feet from the crossing, or the standard "Mississippi Law Stop" sign, or the flashing red warning signs on each

side of the south bound segment of Highway No. 1; and that he had failed to see an automobile which had stopped in the adjoining lane, just before reaching the cut of cars, with its tail light and parking lights burning; and that appellant, although familiar with the crossing, did not see the cut of cars across the highway; the court below, sitting without a jury, concluded that the appellee railroad had not been guilty of any negligence and that the collision was caused solely by the negligence of the appellant, and dismissed his complaint with prejudice. It wrote an exhaustive, accurate and well reasoned opinion published in 188 F.Supp. 422 et seq., and we refer to that opinion as setting forth a correct statement of the facts and as accurately analyzing and deciding the legal questions presented. We think that there is ample support in the record for the opinion of the court below, both on the facts and the law, and we affirm the judgment entered by it.

The thoroughness with which the court dealt with appellant's contentions leaves little for us to write about and we confine ourselves to a brief discussion of the contention, earnestly urged before us, that the court below did not give sufficient consideration or weight to appellant's theory that the situation at the crossing created an optical illusion which had produced seventeen accidents [1] and which required that the court find for appellant. Appellant's position with respect to his optical illusion theory of liability is copied in the margin.[2]

We do not agree with the argument thus advanced by appellant. The larger part of two pages of the reported opinion (188 F.Supp. pp. 425, 426) is devoted to a detailed analysis of this contention and the cases upon which it rested and to a logical and reasoned response thereto.[3]

1. The court admitted testimony as to the fifteen accidents occurring prior to the one involved in this action, but excluded the testimony as to two occurring after it.

2. "The facts in this case are not disputed. We submit that the facts are fairly and accurately stated in the opinion of the trial judge.

"There are, however, certain facts which are undisputed and are not mentioned in the opinion of the trial court. We submit that the proof in this case without material contradiction according to the testimony of the witnesses of both the appellant and the appellee demonstrated that this grade crossing was unusually hazardous due to the lighting conditions and the fact that the grade crossing was elevated and that the vehicles traveling both north and south on said highway were faced with an illusion because of the fact that lights from vehicles could be seen underneath and through open box cars, all of which gave the impression that the road ahead was unobstructed. Thus, as pointed out by the Trial Judge in his opinion, the two highway patrolmen, both long experienced and both thoroughly familiar with this grade crossing, testified in detail as to the conditions which constituted the dangerous character of this grade crossing, and both being of the opinion that the grade crossing was unusually hazardous. * * *

" * * * Mr. Stinson testified that after his first visit to the scene, the railroad company had installed two regular Mercury Vapor street lights at the grade crossing, reflecting a light directly on the box cars, and he admitted on cross-examination that the condition was much better with those lights * * * "

3. The sole testimony advanced as supporting this theory, which was not discussed in detail by the trial court, related to the two Mercury Vapor street lights which had been installed at the crossing. The presence of these lights and the fact that they had been placed there during the trial was volunteered by appellee's witness Stinson, a lighting expert employed by the Tennessee Valley Authority. He had been to the crossing two nights before he was testifying and the lights were not there. On his visit the night before he testified, the two lights had been installed and were functioning. Their presence was mentioned only by him, and there was no showing at all as to who had put the lights there or was maintaining them.

Even if it could be assumed that they had been installed by the Railroad at a date more than a year after the accident happened, such proof, if competent at all, cf. Chicago Mill & Lumber Co. v. Carter, S.Ct.Miss. en banc, 1950, 45 So.2d 854;

We will supplement what it has written by a more detailed examination of a few of the arguments advanced by appellant in connection with this phase of the case. As to the argument that the grade crossing was elevated, the facts show that, from a point 700 feet north of the crossing the road proceeds upon an ascending grade of less than one per cent, and the same is true from the same distance as a motorist approaches from the south. This almost imperceptible grade would, if it had any effect at all, tend to raise the lights of automobiles approaching from the south so that they would be less visible under the cars. Moreover, the lights of those approaching from the north would have a greater tendency to play directly upon the cars. The grade which the Supreme Court of Mississippi thought important in Boyd v. Illinois Central R. Co., 211 Miss. 409, 52 So.2d 21, was descending a "dip", which caused the lights on the automobile to shine under the cars ahead, rather than to shine on them.

█ Assuming that lighted cars in large numbers moved at times on the parallel north bound division of the road and that the effect attributed to the slight upgrade is that contended for by the appellant, this proof would have relevance only as tending to establish that the crossing was at times a dangerous crossing. But appellant's right to recover in this case depends upon the conditions existing at the time he approached the point of accident. The trial court was justified in finding—indeed the evidence was all one way—that the only car in sight at the time on the north bound lanes was one which had pulled up to the standing train and stopped and turned on its parking lights. The only car in the south bound lanes where appellant was traveling was in the left half of the road and had pulled up to the cut of cars and turned its lights to parking position, including the red tail lights. Certainly appellant did not face a situation where lights of other cars could have caused any confusion.

A highway patrolman took three pictures of appellant's car before it was moved from the point of accident, and they all show that the car ran into the trucks at one end of the box car which shut off the lane in which appellant was traveling from any light coming from the south. In other words, both front wheels of appellant's car were in contact with the trucks. The pictures show also that the steel beam running along the side of the boxcar which appellant struck extended down to a point some inches lower than the top of the front wheels of appellant's car. Moreover, the word "Pacific" was printed in large white letters on the boxcar directly in front of appellant's car. The door to the boxcar was closed.

It was undisputed also that the car in the left lane of the south bound highway was so stopped that it would practically prevent any light from the other side of the train getting to the appellant as he approached it.

█ Seven photographs with one second exposure were taken, under conditions substantially duplicating those facing the appellant at the time of the accident, from an automobile whose headlights were upon low beam. Beginning at a distance of 400 feet from the crossing the trucks of the car and the fact that it had white lettering upon it were clearly visible, and those taken from 250 feet, 200 feet and 150 feet showed the presence of the boxcar and the trucks and wheels so plainly that no one with normal eyesight could have failed to see it if he had looked. Seven pictures were also taken under the same conditions with the automobile lights on high beam.

Columbia & P. S. R. Co. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405; 20 Am.Jur., Evidence, § 282, and Annotation entitled "Precautions After Accident," 1957, 64 A.L.R.2d pp. 1296 et seq., would have little probative value.

The question before the trial court was whether the evidence concerning what happened and what the situation was at the time the accident happened and whether it showed that the Railroad had failed to exercise reasonable care.

The boxcar was plainly visible as far as 600 feet away, and the four pictures taken at 50 foot intervals from 400 to 150 feet show the boxcar so plainly that the lettering on the car could be read without difficulty. The showing was overwhelming that, at the time appellant ran into the boxcar, none of the lighting conditions relied upon by appellant were present.

The opinions of the two highway patrolmen that the crossing was a dangerous one were considered by the court below. There were countervailing opinions which the court also had before it. This Court has recently [4] had this to say concerning opinion evidence: "While we do not feel prepared to conclude that the Texas courts have gone this far, it is nevertheless true that the weight to be given to opinion evidence is a matter for the trial court's determination. The trial court is not bound by the opinion evidence of experts even when uncontradicted. [Citing cases.] Moreover, here there was opinion evidence to support the trial court's finding that the appellant had failed to carry its burden of proving discovery in paying quantities."

This point relied upon by appellant, just as was the case with the others, presented a clear issue of fact to the court below. Its findings were as clearly based upon substantial evidence and we are not tempted to classify them as clearly erroneous. The six other people in the two vehicles approaching from opposite directions had no trouble seeing the cut of cars standing across the road, and we think the court below made an accurate evaluation of all of the evidence in arriving at its findings of fact.

Appellant relies upon a case from the Supreme Court of Mississippi based upon an optical illusion, Matthews v. Thompson, 1957, 231 Miss. 258, 95 So.2d 438. There, a construction company had piled a large mound of dirt in close proximity to a road and had placed a string of lighted flares on the south portion of the pavement and a parallel line of lighted flares some eight or ten feet north of the opposite edge of the pavement. The two lines of flares tended at night to outline a roadway several feet north of the actual paved surface. The chancery judge trying the case found that these two lines of lighted flares, under the circumstances, created an optical illusion and amounted to negligence, which caused a collision of two automobiles. All the Supreme Court of Mississippi did was to hold that the chancellor's findings of fact would not be disturbed on "this sharply disputed issue of fact." Practically all of the cases relied upon by appellant held only that the disputed facts involved in each case were sufficient to require submitting the case to the jury.

Finding, as we do, that the court below correctly found the facts and applied the law of Mississippi to them, its judgment is

Affirmed.

---

4. No. 18910, m/s Feb. 1, 1962, Mound Company v. The Texas Company, 5 Cir., 298 F.2d 905.