Eura DUFRENE, Appellant,

v.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.

No. 18950.

United States Court of Appeals
Fifth Circuit.

May 17, 1962.

Edward C. Alker, New Orleans, La., for appellant.

Charles Kohlmeyer, Jr., and Lemle & Kelleher, New Orleans, La., for appellee.

Before RIVES, CAMERON and BELL, Circuit Judges.

PER CURIAM.

Appellant Eura Dufrene sustained serious injuries while working for B. T. Ritchie when the boom of a crane upon which appellant was employed collapsed and fell upon him. He made claim against his employer and has, since the time of his accident, been paid under the Workmen's Compensation Laws of Louisiana (LSA–R.S. 23:1021 et seq.). This action was brought by appellant against appellee Indemnity Insurance Company of North America, the insurance carrier of

---

the manufacturer of the boom, based upon his claim that the boom was defective in design or manufacture. His case was submitted to a jury, which returned a verdict against him and in favor of appellee. Appellant's chief attack upon the actions of the court below is based upon his contention that error was committed in the rulings of the trial court upon the testimony given by the experts relied upon by the respective parties.

■ The trial below developed largely into a battle between the experts. We do not find that the court below erred in admitting and rejecting their testimony. On the other hand, a careful examination of its rulings leads us to the conclusion that no such errors were committed as claimed by the appellant. Moreover, the handling of such minutiae of the trial was committed largely to the discretion of the trial judge.

■ It is clear that appellant's chief complaint is that the jury accepted appellee's expert testimony over that of appellant. This Court has consistently left to trial courts the choice as to which set of experts will be credited. Swift & Co. v. Morgan and Sturdivant, 5 Cir., 1954, 214 F.2d 115, 49 A.L.R.2d 924; New York Life Insurance Co. v. Johnston, 5 Cir., 1958, 256 F.2d 115; and Shofner v. Illinois Central Railroad Co., 5 Cir., 1962, 300 F.2d 188.

The case was fairly and fully presented to the jury by the court below and, under the scope of review of such cases uniformly followed by this court, cf. Greyhound Corporation v. Dewey, 5 Cir., 1957, 240 F.2d 899, we feel that the judgment entered upon the jury's findings should be and it is

Affirmed.

RIVES, Circuit Judge (concurring specially).

I concur specially because I do not agree that claimed error in the admission or rejection of expert testimony is a matter of "such minutiae" that the scope of review is practically negligible and also because I would give in more detail the grounds of my concurrence.

This suit is against the insurance carrier of a crane boom manufacturer for defective and negligent manufacture of a crane boom. The boom in question had been acquired by the plaintiff's employer, B. T. Ritchie, and mounted on a marsh buggy to dredge canals. After three years of continual use, the boom buckled under a load and fell to the ground, seriously injuring the plaintiff.

As the majority opinion indicates, the trial developed into a battle of experts. The plaintiff first presented the testimony of his employer and fellow employees to show that the boom's collapse had not been caused by operator negligence at the time of the accident, by any previous damage to the boom during its three-year use, or by any deterioration due to faulty maintenance. He then placed on the stand his expert, Mr. Gilkerson, who was qualified as a metallurgist. Mr. Gilkerson testified that in his opinion there were three possible causes of the boom's failure: 1) a fault in material; 2) a design fault in the structure of the boom; or 3) an operational error, where an operator had either damaged the boom or improperly lifted his load. He further testified that he had tested the boom in question for only No. 1 above, the quality of the steel, and found it adequate. He admitted that he could not testify as to operational error and that he had made none of the calculations necessary to reach an opinion on design adequacy. Nevertheless, he offered as the cause of the failure, faulty design.

The defendant placed only one witness on the stand, Mr. Reiniche, whom it qualified as a design expert and whose testimony is the basis of this appeal. He testified that, on the basis of his analysis of a similar boom, the design was more than adequate to support the load which the plaintiff's witnesses had stated was probably on the boom at the time of the accident. The plaintiff-appellant focuses his claim of error on the answer given over objection to the following question: "Q. Now Mr. Reiniche, based upon your analysis of this boom and based upon the analysis of the metal which you

did not make but which you heard Mr. Gilkerson as a metallurgist did make, will you state please whether or not you can form an opinion if I told you that that boom failed." He answered that he could and that in his opinion it would be due to either prior damage to the boom or operational error at the time of the accident. The plaintiff-appellant insists that that answer was misleading to the jury and prejudicial since the basis and premises of the opinion were unproven, misleading, and flatly contrary to the undisputed testimony of the plaintiff's witnesses.

The Louisiana rule of evidence with respect to the admissibility of expert testimony is clearly stated in Interdiction of Escat, 206 La. 207, 19 So.2d 96 (1944), where, quoting from earlier cases, the court stated that the opinions of experts "should state the facts on which such opinions are based, and the opinions themselves are not conclusive but must be weighed as other evidence." And as a Louisiana court more recently stated, "expert testimony given in response to hypothetical questions predicated on a statement of unproven facts, has no probative value and should not affect the outcome of a case." Brown v. Aetna Casualty & Surety Co., 96 So.2d 357, 360 (La.App.1957).

Relying on those precedents the plaintiff-appellant first argues that the jury was misled into believing that Mr. Reiniche based his opinion upon an examination of the boom that struck the plaintiff. Such an examination, however, was impossible since that boom had been scrapped and destroyed soon after the accident and many months before Mr. Reiniche was retained by the defendant. This was known to the jury. In addition, Mr. Reiniche testified that the boom he examined was in the yard of the dealer who provided the boom that collapsed and was represented to him as being identical to the one that injured the plaintiff. Any doubt as to the boom examined was put to rest by extensive cross-examination on that very point.[1] There is, therefore, no reasonable ground for believing that the jury was misled.

Returning to the question, it asks for an opinion based on Mr. Reiniche's own examination and on Mr. Gilkerson's analysis of the metal. I think that the factual basis for the question was clearly and validly in evidence, and that the competency of the witness to answer the question had been established. In view of the theoretical possibilities set up by the plaintiff's own expert, the inevitable answer was that failure must have been due to some mishandling of the boom in the hands of the plaintiff's employer.

The plaintiff-appellant further complains that Mr. Reiniche's conclusions were directly contrary to the undisputed testimony of the plaintiff's employer and fellow employees to the effect that the boom had never been mishandled during the three years of its operational use. The case of Spears v. Stone & Webster Engineering Corp., 161 So. 351, 356 (La. App.1935) lends some support to that con-

---

1. "Q. Then is it possible there could be a difference between this boom that you examined and the boom which fell and injured Mr. Eura Dufrene?

"A. Did you say is it possible?

"B. Is it possible?

"A. Yes, sir, it is very possible because this boom that I examined while coming from a T-35 was laid out in the yard and I picked up my measurements from this boom. The boom that this man operated, I don't know that it was standard boom of T-35.

"Q. You were just told?

"A. I was told. I was told that the boom that failed was a T-35. Now I went to Southern Equipment and they showed me the boom that they sell with a T-35 and had this boom in the yard. Because a T-35 actually has a new model number now. I think it is T-350. But it was not a T-350 boom that I examined.

"Q. But you do not know whether it is the same size and specifications as the boom—

"A. It was represented to me as being the same size. I do not know because I did not actually measure the boom that failed because that boom had been destroyed.

"Q. Well, if the measurements were different then your computations would be different, would they not?

"A. Yes, sir, they would be different."

tention. There the court held that an expert may not testify "in contradiction to positive testimony as to the actual facts." However, included among the facts here at issue were the examinations of both Mr. Gilkerson and Mr. Reiniche. If opinions based on these examinations differed from other testimony in the record, there is a conflict in the facts themselves. Resolution of this conflict, and the opinions based thereon, is within the province of the jury in weighing evidence. In addition, the testimony of the plaintiff's employer and fellow employees is not so conclusive that the issue was no longer open to doubt. It would be close to impossible, on the basis of the memories of the individuals handling a boom, to eliminate every possibility of its mishandling during three years of continual operational use. I therefore believe that the answer was admissible, and that the issues of credibility of the witnesses and validity of the expert opinions and the facts upon which they were based were for the jury. I concur specially.