CENTRAL RAILROAD vs. COGGIN.

| 73 | 689 |
|----|-----|
| 114 | 373 |
| 73 | 689 |
| 115 | 642 |
| 73 | 689 |
| 119 | 309 |

1. The verdict is supported by the evidence.

2. The question of negligence was fairly submitted to the jury, and the rule on this subject has been too long settled and too uniformly applied to admit of further qualification or modification.

3. The charges of the court excepted to in the fourth, fifth and sixth. grounds of the motion for new trial are in accordance with the law as declared in this case when it was formerly before this court (62 Ga., 685), and it is binding therein.

4. A witness may testify to his age, without first requiring him to show from what source he derived his information, and when and where he was born. The correctness of his statement may be tested on cross-examination by asking whence he derived his information and likewise the time and place of his birth; but on such subjects hearsay evidence is admissible from the necessity of the case.

5. Where one was injured by an accident on a railroad, after having shown the nature and character of the injury received and the reduction of his wages growing out of infirmities consequent thereon, he could testify as to the extent to which his capacity to labor was diminished in consequence of the injury he had received.

6. Taken in connection with other facts to which he deposed, it was not error to permit the plaintiff to testify that "as the engineer slacked up for the switchman to get on the train, he seemed to · shut off his engine, and the car ran up on the engine, and he opened his engine right suddenly, I suppose." The supposition related only to the sudden opening of the engine, and amounted to nothing more than an opinion that such was the case. And where the subject under investigation is a proper one to be illustrated by the opinions of experts, unskilled persons may give their opinions, provided they accompany them with the facts from which. such opinions are deduced.

October 21, 1884.

Railroads. Negligence. Age. Witness. Evidence.. Before Judge SIMMONS. Bibb Superior Court. October · Adjourned Term, 1883.

Coggin brought case against the Central Railroad to recover $10,000.00 as damages for a personal injury. The · case will be found fully reported in 62 Ga., 685. To an understanding of the questions now made, it will only be · necessary to state that the evidence for the plaintiff showed:

in brief, the following facts: Under a contract between the Western Union Telegraph Company and the Macon and Western Railroad, the poles of the former were being delivered along the line of the latter. There was a conductor, White, and an engineer, Orr, on the train, who controlled its movements. Plaintiff was one of the hands of the telegraph company, under the control of one Awtry, the foreman. The poles were piled on flat cars. Three hands were engaged in throwing poles from the car. It did not stop, but moved slowly along at a uniform speed, and the heavy end of the pole was cast off, and the entire pole was thus pulled from the train by its own weight and the motion of the car. Two other hands on the same car were engaged in placing the poles in position. Plaintiff was one of these. While the train was running on a slight up-grade, and while plaintiff had hold of the end of the pole, the train jerked violently, so that he relaxed his hold, fell from the car and was run over and injured. The speed had been slackened to allow the switchman, who had just changed the switch, to get on; and the increase of speed occurred without any warning. If steam is shut off from an engine, the box-cars run up on the engine; and the effect of shutting off steam was to make the cars run up on the engine and make a little "slack." There was no necessity for the jerk at the place, so far as he could see; a skillful engineer can avoid jerks to a certain extent. He has since had two years' experience in running an engine. The injury occurred near a switch. After testifying substantially to these facts, plaintiff further stated that, as the train passed the switch going up, the engineer was in a hurry to make a station above, in order to meet the night passenger train, and as he slacked up for the switchman to get on the train, he seemed to have shut off his engine, "and he opened his engine right suddenly, I suppose." Didn't know what the engineer was doing; all that he knows is that the train was running along very slowly, and a sudden jerk threw him down. He knew it was the jerk of the engine, from experience and sense. He had

no experience at the time as to running of engines. He knew the jerk was from the engine. He heard the exhaust of the engine when it started off. By exhaust is meant the steam escaping from the engine, and that cannot be done while the engine is standing still; and he heard the exhaust just about the time he was jerked. When you stop the engine, running up or down hill, or on a level, the cars run up on the engine. They never run backwards. The jerk is caused by the taking up of the " slack " between the couplings. When an engine is stopped and there is a "slack," and it starts off, as it pulls up the slack it jerks each car, and when there is no slack there is no jerk, no matter how much steam is put on. If the couplings are all stretched out to the fullest extent and the couplings are all taut, there is no jerk only at the last car, and if that is also taut, the whole train moves off like a piece of solid wood, if in the hands of a skillful engineer. The train left Macon an hour after the appointed time. The engineer came back, and was excited and hurried. He wanted to reach the station above, so as to meet the down passenger train.

On the subject of the extent of the loss caused by his injury, plaintiff testified, in brief, as follows: Was sixteen years old at the time; was twenty-one on the 8th of February, 1875. He was receiving $40.00 a month at the time and his board; he rates his board at $15.00 per month. Is not able to perform the same duties now as he was then. Sometimes can't stand a half hour on his leg, but has to rest. Has a dead aching which has continued ever since it was done—most violent in cloudy weather. No human being can explain the pain he suffered when the injury was done; had rather be shot or cut through. Has tried to learn the painter's trade, and has been working at it since, but on account of his injuries cannot stand on a ladder, but has to stand on the ground. Does sign painting, and if he could get plenty could make a living. With his capacity, could make from $2.50 to $3.00 a day, if he could work all the time. As it is, does not make $1.50 a

day. His capacity for labor has been diminished one-half.

There was other testimony as to the nature of the injury, etc., not material here.

The evidence for the defendant was, in brief, as follows: Awtry was the foreman of the telegraph squad, and the train was to be run as he instructed. He instructed the engineer, and if the engine ran too slow or too fast, required him to change accordingly. He was on the engine with the engineer, conductor, fireman and wood-passer. He was there to show the men how to drop the poles and to tell the engineer how to run. The latter was a good, experienced and careful engineer, and the train was running slowly on a steep up-grade. It was not checked for the person who changed the switch to get on, nor was there any slacking. The steam was not taken off or put on suddenly. At the speed at which the train was going and with the load which it had, the putting on of steam could not have produced a jerk, but would only have caused the speed to increase. If the steam had been suddenly taken off, the train would have stopped almost immediately; the car wheels would have rolled up a little towards the engine, but would have gone back as soon as they stopped, until the coupling became taut again. The engineer testified that, with the speed at which they were going, he did not suppose that the car would have run up on the engine at all. He denied being behind time or in a bad humor, or that there was any complaint of him made that morning. The conductor had charge of the train generally, but it was run according to the instructions of Awtry as to speed and stoppages. The train had no regular schedule time, but was run slowly for the purpose of distributing the telegraph poles, and they had only to keep out of the way of regular trains. There was no putting on or taking off of steam, and no sudden jerking.

. There was other evidence, in some respects conflicting, but it is not material to be set out here. The jury found for the plaintiff $1,250.00. Defendant moved for a new trial, on the grounds set out in the decision, which motion was overruled, and exception was taken.

R. F. LYON, for plaintiff in error.

BACON & RUTHERFORD. for defendant.

HALL, Justice.

The jury having found a verdict for the plaintiff, the defendant made a motion for a new trial, which was refused, and this writ of error is brought to reverse the judgment refusing the new trial.

The following are the grounds of the motion :

(1.) Because the court erred in allowing the plaintiff to testify, over the objection of defendant, as follows: " As he (the engineer) slacked up for the switchman to get on the train, he seemed to have shut off his engine, and car ran up on the engine, and he opened his engine right suddenly, I suppose,"—the objection being that it was mere supposition on the part of witness, and not anything within his own knowledge.

(2.) Because the court erred in allowing the plaintiff to testify, over the objection of defendant, as follows: " That he was sixteen years old at the time he was injured by the railroad,"—the defendant insisting that he couldn't so testify unless he showed from what source he derived the information, and also when and where he was born.

(3.) Because the court erred in allowing the plaintiff to testify, over the objection of defendant, " that his capacity to labor had been diminished by this injury fully one-half."

(4.) Because the court erred in charging the jury as follows: "Or if you should believe that the engineer of that company, without cause, needlessly and unnecessarily, put on great force of steam, and thereby caused a violent

jerk, then it is for the jury to say whether that is negligence or not; and if you should find that it was negligent or causeless, then, of course, the man would be entitled to damages, whatever damages he has sustained."

(5.) Because the court erred in charging the jury as follows: "Look to see upon what train they were going out, how that train was managed, whether it was under the control of the employés of the Central Railroad Company, or whether it was under the control of the employés of the Telegraph Company. Did Mr. Awtry have control of the engine, and did he tell this man, Orr, how to run his engine, when to put on steam and when to take it off, or did he simply give him directions, ' I want you to go so many miles an hour, so these poles can be thrown off;' see what grade they were going up, whether the cars were tight, whether there was any slack, and determine from the evidence, if there was no slack, whether the jerk could be produced. You have heard the evidence. I cannot tell you what my opinion is, but you must determine whether that violent or sudden jerk could be produced at that time and under those circumstances. You must determine whether it was needlessly and carelessly done. Then, on the other hand, you may look to see whether the steam was shut off or not, whether any brakes were put on, or whether the engine was reversed, or whether it came to a slower run than the cars behind it, and if so, was there any slack produced by that; then look to see whether any steam was put on, and if so, how much. Look to all the facts as disclosed by the evidence, and determine whether there was any violent or unnecessary jerk; and if you find that there was any, and that the engineer was negligent and did not perform his duty in a skillful manner, then, I say, you would be authorized to find for the plaintiff."

(6.) Because the court erred in charging the jury as follows: " As I told you, negligence is for you to determine, by looking at all the facts and circumstances of the case,

as to whether the engineer needlessly and unnecessarily put on too much steam and caused a violent and sudden jerk. That is what he alleged—that he put on that steam and jerked the engine when there was no use of it. The railroad says, in the first place, that it did not do that, and that is for you to determine. Now look to see whether that was true or not; whether, in running that engine, he put on this steam at a time when he ought not to have done it, and caused a jerk which he ought not to have caused; and in this connection you may, to see, even if there was a jerk, whether it was necessary for the en_ gineer, in carrying out the orders of Awtry, to run so many miles an hour, if there was such an order, and whether it was necessary to put on steam to run that many miles an hour."

(7.) Because the verdict of the jury is contrary to the evidence.

(8.) Because the verdict of the jury is contrary to law.

(9.) Because the court erred in charging the jury that negligence is a question for the jury—whether it was needlessly and carelessly done; that is, whether the injury to plaintiff was done by the defendant needlessly and care_ lessly.

1. There is sufficient evidence to sustain the verdict. The judge who tried the case was satisfied to let it stand, and we cannot say that he abused his discretion in so doing.

2. The question of negligence was fairly submitted to the jury. The rule on this subject has been too long settled and too uniformly applied to admit of further qualification or modification. In this instance there has been no departure from it, as usually announced and recognized.

3. The charges of the court excepted to in the 4th, 5th and 6th grounds of the motion are in accordance with the law, as declared in this case, when it was formerly before this court. 62 *Ga.*, 685. Whether that decision be right or wrong, it is immaterial to inquire; it is enough to know that it is the law of this case. Neither this nor the supe-

rior court has power to modify or change it. We could not do so if we would; and it is proper to say that we would not if we could, as we deem it a sound and correct exposition of the principles applicable to this controversy.

4. There was no error in allowing the plaintiff to testify to his age, without first requiring him to show from what source he derived his information, and when and where he was born. If the defendant had deemed this important, it had the opportunity of testing the correctness of his statement by asking, on cross-examination, how he got his information as to his age, and likewise as to the time and place of his birth. The law does not circumscribe or limit the sources from which such information may be derived. Contrary to the general rule, resort may be had to hearsay testimony to establish such facts. From the very nature of the inquiry, this is, in most instances, a necessity. Code §3770. It is admissible, in cases of marriage and death, to establish relationships and pedigrees. The rule admits the declarations of deceased relatives or the general reputation in the family. *Ib.*, 3772.

5. Neither was there error in allowing the plaintiff to testify as to the extent his capacity to labor was diminished in consequence of the injury he had received; the nature and character of these injuries having been testified to both by himself and others, and he having likewise shown the reduction of his wages, growing out of infirmities consequent upon this injury.

6. Taken in connection with other facts to which he deposed, the plaintiff did not indulge in mere suspicion when he testified that, " as the engineer slacked up for the switchman to get on the train, he seemed to have shut off his engine, and the car ran up on the engine, and he opened his engine right suddenly, I suppose." The supposition relates only to the sudden opening of the engine, and from the effects produced, amounts to nothing more than an opinion that such was the case. In every instance where the subject under investigation is a proper one to be illustrated

by the opinions of experts, unskilled persons may give their opinions, provided they accompany them with the facts from which the opinions are deduced. *Central R. R. Co. vs. Senn,* decided at this term; *McLean vs. Clark,* 47 *Ga.,* 24.

Judgment affirmed.