THE GEORGIA RAILROAD vs. BRYANS.

| 77 | 429 |
| 95 | 687 |
| 77 | 429 |
| 105 | 138 |

1. Suit having been brought by an employé of a railroad company on account of an injury sustained by him while engaged in coupling cars, and there being evidence that the plaintiff did not bring about this injury by his fault or negligence, the *onus* was shifted to the company to show that its agents were in the exercise of all ordinary and reasonable care and diligence, otherwise the statutory presumption of negligence would be against them.

(a.) There was sufficient evidence in this case to sustain the finding of the jury that the plaintiff was not negligent, and that the other employés of the defendant were so.

2. Where, in a suit by a car-coupler for an injury sustained by him, he testified to the injury and the manner of its occurrence, there was no error in allowing him to be asked what prevented him from making a safe coupling, and in admitting his answer that the train was coming back too fast, and that was the whole cause of it.

(a.) This case is distinguished from those of *Central R. R. vs. Kelly*, 58 *Ga.* 108; *Central R. R. vs. DeBray*, 71 *Id.* 406, 420; and *Wylly vs. Gazan*, 69 *Id.* 506, 509, 510.

December 7, 1886.

Railroads.   Damages.   Negligence.   Master and Servant.   Evidence.   Before S. H. HARDEMAN, Esq., Judge *pro hac vice.*   Clarke Superior Court.   April Term, 1886.

Robert L. Bryans brought suit against the Georgia Railroad and Banking Company to recover $6,000 damages for the crushing of his right thumb while engaged in coupling cars for the company.   Three grounds of negligence were alleged :   (1) that the bumpers of the two cars were of uneven heights; (2) that the coupling-link was too short and of improper shape; (3) that the engineer backed the engine with too much speed.

The evidence for the plaintiff was, in brief, as follows: *Plaintiff* testified : On August 14, 1884, he was a trainhand and brakeman of defendant's service-train.   He went to couple two cars together and was standing by one of them while the engineer backed the other to it.   He expected the engine to come back with the usual speed, but it came back too rapidly, and the safest thing to do was to remain where he was and make coupling, as otherwise the cars might have come together and crushed him.   Usually the engineer slacks his speed when backing to make a coupling, but on this occasion he backed the car attached to the engine about a car's length, and when within about six feet of plaintiff, increased the speed.   Still the plaintiff could have made the coupling but for the fact that the link was too short and the bumper on one car was three or four inches higher than that on the other.   He could not tell this from looking at them where he was.   The link was shorter than those ordinarily used in coupling such cars.   It appeared to be long enough, but was not.   He could not always tell the length of the link, part of it being in the bumper.   The engineer could not see the plaintiff on account of a box-car.   It was the duty of the conductor to indicate to him when he got near enough to the rear train.   The bumpers were together before the plaintiff discovered the inequality in their height, and he

could not get out without trying to make the coupling. He had been coupling about a year. He used his hands for the purpose, and nothing else was furnished him. He never saw sticks or paddles used by anybody. What prevented his making a safe coupling was, in his judgment, that the engine was coming back too fast, and that was the whole cause of the accident.

*Cross-examination:* The link was in the lower bumper. It is the rule of the men to put the link in the higher bumper; that is the practice of the men. It is put in the higher bumper because you could make the coupling easier; it was more dangerous to have it in the lower. I knew that it was more dangerous to have it in the lower bumper, and this link was in the lower bumper. I found this link in a car. Some one else had put it there, but so far as the coupling was concerned, I did it all myself. Nobody else was charged with that duty. It is the business of the coupler to put the link in the right place. I had time to have changed the link from one bumper to another, but I thought they did not need changing; I was left to myself to make that coupling just as I thought best.

I have frequently coupled cars of different heights, and it was a common thing to have different height bumpers in the same train. When a coupler has uncoupled a car, he leaves the link in the rear end of the car; he does not carry it to the depot or put it inside the car. After that, when a man comes along to couple a car to it, it is his business to fix the link. The danger was to some degree increased by leaving the link in the lower bumper. The car that I was to couple was pushed back about a car's length, and started from a standstill. When the coupler is ready, he lets the conductor know, and he signals the engineer. It all starts from the coupler, and he does it to suit himself.

*Hueson* swore, by interrogatories, that he was the conductor of the train on which plaintiff was hurt; that the

bumpers were of uneven heights, there being about three inches difference; and that it is more difficult to couple when the bumpers are uneven. The link used was a common straight link, which was a great deal more dangerous than a long link. Did not remember speed of train. It might have been running a little above ordinary speed. The engineer was moving according to my directions.

There was other testimony as to the nature of the injury and its effect on the plaintiff's capacity to work.

The jury found for the plaintiff $600. The defendant moved for a new trial on the following grounds:

(1)–(3.) Because the verdict was contrary to law and evidence.

(4.) Because the court admitted, over defendant's objection, the following questions addressed to plaintiff, and his answers thereto: Question by *Mr. Rucker:* "State what prevented your making a safe coupling?" Answer by plaintiff: "It was coming back too fast."

*Mr. Rucker:* "In your judgment, that is what occasioned it?"

*Plaintiff:* "It was coming back too fast was the whole cause of it."—The objection was, that the answers of witness were in effect expressions of his opinion and conclusions from facts and not statements of facts themselves.

The motion was overruled, and the defendant excepted.

Jos. B. Cumming; Geo. D. Thomas, for plaintiff in error, cited, on height of bumpers: 118 Mass. 419; 84 Ill. 429; 67 Mo. 239; 33 Mich. 256, 133; 1 Cent. R. 728.

On risk of employé: 111 Pa. 343; Wood's Mast. and Serv. §326; 8 Am. and Eng. R. R. Cas. 98.

Negligence of employé: 3 Wood's Rwy. Law, §383; Wood's Mast. and Serv. §402; 98 Mass. 573; 9 Allen, 396; 3 H. & N. 648; 50 *Ga.* 473; 63 *Id.* 173; 71 *Id.* 423, 468.

Opinion as to cause of injury: 1 Gr. Ev. 441; 58 *Ga.* 108; 76 *Id.* 459; 71 *Id.* 420; 39 Mo. 94; 29 N. H.

J. N. GLENN; T. W. RUCKER, for defendant, cited: What shows negligence of employé, preventing recovery; 73 *Ga.* 689, 814; 66 *Id.* 173, 260; 71 *Id.* 424, 408, 648, 22; Code, §§2947, 3067; Beach Neg. §§139, 135; Wood's Mast. and Serv. §456; 63 Iowa, 210; 43 *Id.* 109; 71 N. Y. 228; 56 *Ga.* 645; 18 W. Va. 579.

Right to act on presumption of proper conduct of other employés: 56 Iowa, 553; 73 *Ga.* 744; 71 *Id.* 644; 67 Ill. 287; Beach. Neg. §23.

Amount of proof: 47 Am. R. 75.

Duty to furnish safe tools: Beach Neg. §§123–6; Wood's Mast. and Serv. §345.

Coupling with hand if no stick furnished: 30 Minn. 231; 74 *Ga.* 59; 56 *Id.* 647; Wood's Mast. and Serv. §327.

Cause of injury, judgment of witness as to: 125 Mass. 62; 60 Iowa, 429; 61 *Id.* 452; 6 Col. 303; 19 S. C. 521 (s. c. 45 Am. R. 794); 73 *Ga.* 689; 1 Whart. Ev. §513; 66 *Ga.* 172; 3 Phil. Ev. 761.

Amount of damages: 71 *Ga.* 424; 66 *Id.* 173, 260; 56 *Id.* 196

HALL, Justice.

Two verdicts having been rendered in favor of the plaintiff, the court refused to set aside the last and grant a new trial upon any of the grounds set out in the motion therefor. This was an action by an employé of the defendant, the Georgia Railroad and Banking Company, to recover damages for an injury sustained by him in coupling its cars. In the performance of this duty, a portion of one of his thumbs was so mashed and crushed that it had to be amputated, as he alleges, and as he seems to have proved, at least to the satisfaction of two juries, without any fault or negligence on his part, but by the negligent and careless handling of the company's train by his co-employés, who, in conjunction with him, were managing and operating it. There is no complaint that the last finding in his favor was

excessive, but it is insisted that he was not entitled to re-
cover at all, under the facts of the case as proved on the
trial, and for that reason, it is said the verdict is contrary
to law; and further, that it is contrary to evidence; that it
was contrary to a specified charge of the court; and lastly,
because the court erred in admitting, over.defendant's ob-
jection, the following questions addressed to plaintiff by
his counsel when he was testifying in the cause : " State
what prevented your making a safe coupling ?"  Answer,
"It" (the train) " was coming back too fast."  Counsel:
"In your judgment, that is what occasioned it?"  Answer,
"It was coming back too fast, and that was the whole cause
of it."  The error alleged is this, that the answers were in
effect the expression of witness's opinion, and not state-
ments of fact; or rather, his conclusions from facts, which
conclusions it was the province of the jury alone to draw.
The plaintiff's evidence developed, as causes of the injury
the following, viz : That the bumpers on the cars to be
coupled were of different heights; that the coupling links
were too short and straight; that the link to be used was
on a car belonging to another company, but lately arrived
at the station, and was left in a most dangerous situation
to be used by the coupler; and lastly, the improper
speed at which the engineer brought up the train to be
coupled to the stationary car in question.  It seems that
the train did not acquire this rate of speed until it was
very near the car to be coupled, and that it was not and
could not have been discovered in time to enable the
plaintiff to give a signal to check or moderate it.

1. There was certainly evidence that the plaintiff did
not bring about this injury by his fault or negligence; and
this being proved, the *onus* was shifted on the company to
show that its agents were in the exercise of all ordinary
and reasonable care and diligence, otherwise the statutory
presumption of negligence would be against them.  Code,
§§3036, 3033 and citations under each.  That the question
as to the negligent conduct of each of the parties was

fairly and fully submitted to the jury is conceded, and we are of opinion that there was evidence sufficient to sustain them in finding that the plaintiff was not and that defendant's employés were negligent; at least the judge *pro hac vice*, who presided at the trial, was of that opinion, and we cannot say that he abused his discretion in refusing to disturb the verdict, especially as it was the second finding in favor of the plaintiff.

2. Nor are we clearly satisfied that the evidence objected to was inadmissible for the reasons assigned, or either of them. It is often difficult to draw the line which separates a "statement" of a fact, either from "the conclusion of the witness drawn from such fact," or his opinion as to what caused the damage of which complaint is made. This, in our opinion, is distinguishable from the cases relied on by the learned counsel for defendant, the first being *Central Railroad vs. Kelly*, 58 *Ga.* 108, in which testimony of the plaintiff's opinion as to the entire amount of damage suffered by him was rejected; and the second, the *Central Railroad vs. DeBray*, 71 *Ga.* 406, 420, where it was said, there is no error in rejecting the testimony of a witness, " that any person with ordinary care could have gotten off over the skids where plaintiff did without being hurt; this being a conclusion which the jury might find, but was not such as the witness could draw for them."

In *Wylly vs. Gazan*, 69 *Ga.* 506, 509, 510, witnesses were offered to prove that the words " more or less," used in an advertisement of sale by an executor, would include a deficiency of eight or nine feet in a city lot, and would justify a refusal to comply with a bid made at a sale under such an advertisement, and we held the testimony inadmissible, 1st, because it was one of the conclusions which it was the duty of the jury, under the instructions of the court, to draw from the facts and circumstances attending the transactions; 2d, because it was not a subject for expert testimony, inasmuch as there were no questions of skill, science or trade involved, on which the opinions of

such witnesses could be taken in accordance with §3868 of the code; and lastly, because the questions to be decided were not such as were proper to be illustrated by the opinions and belief of witnesses, although they gave the facts on which these opinions were founded.   Code, §3867.

In this judgment we endeavored to distinguish such opinions and belief and such conclusions from evidence of the existence of a fact, as to which the opinions and conclusions of witnesses were generally inadmissible.   Whether we made the distinction here pointed out plain or not, as we hoped we had done in that case, we are satisfied that the end was attained in the judgment pronounced by Brown, judge, in *The Central Railroad vs. Senn*, 73 *Ga.* 705, 709, 710, 711 ; and here we leave the question, referring only to the numerous cases and text-books cited on the copious, well arranged and exhaustive brief of J. N. Glenn, Esquire, of counsel for the plaintiff in the court below, the defendant in error here.

Judgment affirmed.