**SWIFT & CO.**

v.

**MORGAN & STURDIVANT.**

No. 14629.

United States Court of Appeals, Fifth Circuit.

June 28, 1954.

Welborn B. Cody, Atlanta, Ga., B. J. Mayer, LaGrange, Ga., Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., Lovejoy & Mayer, LaGrange, Ga., of counsel, for appellant.

L. M. Wyatt, LaGrange, Ga., Wyatt, Morgan & Sumner, LaGrange, Ga., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

Morgan and Sturdivant brought this action against Swift & Company for damages to a herd of dairy cows alleged to have been caused from eating cotton seed meal which defendant had manufactured and sold to plaintiffs as feed for animals but which was not suitable for that purpose in that it had been allowed to become putrid and unwholesome and contained poison and did poison plaintiffs' cows. There was a trial before a jury and a verdict for the plaintiffs. From judgment thereon defendant appeals.

On this appeal defendant contends chiefly that the trial court erred in failing to direct a verdict in its favor. It insists that the court should have excluded certain opinion evidence of expert and lay witnesses and that if such evidence had been excluded there was no evidence to support the verdict. In further support of this particular ground of appeal defendant urges upon us the contention that even if the opinion evidence was admissible, its weight was not sufficient to offset positive and undisputed facts that the cotton seed meal did not contain any poison or any substance harmful to livestock and its weight was not sufficient to overcome the effect of Section 42–212, Ga.Code Ann. This section provides that in any controversy arising under the provisions of the so-called Food and Drug Act the certificate of the State Chemist or other State officer making the analysis or inspection, when duly sworn to by such officer, shall be prima facie evidence of the facts therein certified.

There are several considerations which must be kept in mind on review of a case such as this: It is well settled law that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact; and that negligence and what is the proximate cause of damages are questions of fact to be properly submitted to and determined by jurors from a consideration of all the attending facts and circumstances. On a motion for a directed verdict, it is the duty of the court to accept as true all the facts which the evidence tends to prove, and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury.

The evidence viewed in the light most favorable to appellee tended to show the following: At some undisclosed date appellant had a fire at its Albany, Georgia, plant where a large amount of cotton seed was stored. As a result some of the seed became wet. Following the fire, the seed were immediately shipped to appellant's plant at East Point, Georgia, for processing into cotton seed meal. Fifty sacks of the meal so processed were delivered by appellant in one hundred pound sealed bags at its plant to one McCall its dealer, who in turn, and in the same condition as received, delivered directly to appellees and to two other dairymen named Morgan and Johnson thirty, ten and eight bags respectively. This lot of fifty sacks was not processed by appellant in the usual manner and the seed were cooked longer than usual in order to remove any excess moisture. Appellant labelled this cotton seed meal "Prime Cotton seed meal", although the meal was not prime quality. It was off color and had a bad, sour, burned odor. Its fiber content was higher than guaranteed, contained more than the usual amount of linters and contained 620,000 spore and gas forming and heat resisting bacteria per gram as compared to 80,000 per gram for cotton seed meal purchased on the local market, despite the fact that it had been heated longer than usual in the manufacturing process. On the day following the day of the delivery of the cotton seed meal to appellees one of the appellees, Morgan, detected that the meal was off color from prime cotton seed meal and he communicated this fact to the dealer McCall from whom he had purchased the meal. McCall in turn telephoned appellant's manager reporting these facts and the latter, acting for the appellant, represented to McCall that the cotton seed meal was entirely proper for feeding livestock, and that Swift and Company guaranteed its meal to be wholesome and proper as feed for livestock. Upon receipt of this information appellees mixed this cotton seed meal in the usual feed formula they had been using, substituting only this particular cotton seed meal for other cotton seed meal they had previously been using. Appellees began feeding this off color meal to their healthy herd of cattle on the afternoon following the day of delivery which was a Friday. They fed it on Saturday morning and again that afternoon, and on the morning of the following day all of the cattle which had eaten the meal were ill and two of the bulls in the herd died. All of the sick cattle had scours and a loss of appetite but after appellees stopped feeding this newly acquired meal none of their cattle suffered a similar sickness although there was no change in conditions and appellees continued feeding the usual feed formula which consisted of cotton seed meal, wheat bran, snapped corn and minerals, except that other meal was substituted for the meal which they had purchased from appellant. The other two dairymen who had purchased a part of the lot of fifty sacks of cotton seed meal had the same experience with their cattle and when they fed this meal by mixing it in the feed formula they had been using, the cattle, theretofore healthy, became ill in about the same period of time and manifested the same general symptoms. When they stopped feeding this dark meal and substituted other meal therefor and continued feeding the same ingredients as before, there was no further illness in their herd of a similar nature.

The appellant contends that the court erred in failing to exclude certain opinion evidence of expert and lay witnesses who in substance were permitted to testify that in their opinion the cotton seed meal processed by appellant and used by the appellees in their feed mixture was the cause of such cows becoming sick. In support of this contention it is argued that in admitting this opinion evidence the trial court allowed the various witnesses to invade the province of the jury by expressing an opinion upon the ultimate fact which was to be passed upon by the jury. We do not at all agree.

The rules applicable in respect to evidence on diseases and conditions of

animals is as stated in 20 Am.Jur., Evidence, § 815, page 685:

"Diseases and Condition of Animals.—The fact that the care of animals is generally in the hands of practical men rather than professional men renders it necessary, when considering the admissibility of opinion testimony regarding diseases and the physical conditions or care of animals, to apply a much lower standard of qualification to witnesses giving opinion testimony on such matters than is applied to expert witnesses offering testimony as to the diseases or physical conditions of human beings. Persons who have habitually had the care of horses, cattle, dogs, and other domestic animals may testify as to their soundness or the disease which they have or to the cause of their death, as, for example, whether a horse died of fright or of some latent disease. A person need not be a veterinary to testify to such matters, although the testimony of the latter upon a subject of this character is clearly admissible. One having had previous experience as a veterinarian in general practice and experience in treating or examining cattle affected with arsenic poisoning is competent to give an opinion that cattle which he treated were affected with arsenic poisoning."

See also 32 C.J.S., Evidence, § 524, page 222 which is to the same effect.

In Tanner v. State, 163 Ga. 121, 126, 127, 135 S.E. 917, 920, the Supreme Court of Georgia had occasion to consider the type of opinion evidence which is admissible over the objection that it invaded the province of the jury and said:

" * * * Opinions are generally admitted from the necessity of the case. Mayor, etc., of Milledgeville v. Wood, 114 Ga. 370(2), 40 S.E. 239; Southern Mutual Insurance Co. v. Hudson, 115 Ga. 638(2), 42 S.E. 60. But where the question under examination and to be determined by the jury is one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. Penal Code, § 1047. A witness may give an opinion as to the cause of an accident, provided the opinion be accompanied by the reasons upon which it is based. Central Railroad v. Coggin, 73 Ga. 689; Central Railroad v. Senn, 73 Ga. 705; Georgia Railroad v. Bryans, 77 Ga. 429(2); City Council of Augusta v. Lombard, 93 Ga. 284(5), 20 S.E. 312. Where it is an opinion question at what a horse became frightened, a witness, after stating the facts, may testify that he was pretty certain the animal took fright at a particular object. Atlanta Consol. St. Ry. Co. v. Beauchamp, 93 Ga. 6, 19 S.E. 24. A non-expert may give his opinion, based on facts sworn to by himself, as to the cause of a certain person's death, there being no question of skill or science involved requiring the resort to expert testimony. Everett v. State, 62 Ga. 65; McLain v. State, 71 Ga. 279(4); Wise v. State, 100 Ga. 68, 25 S.E. 846. One who is not an expert may, after describing the wound, give his opinion that it caused death, and may give his opinion, with the reasons therefor, that the deceased could not have inflicted the wound himself. Everett v. State, supra. In view of these rulings, the court did not err in admitting the evidence of which the defendant complains in this ground."

Cf. Monroe v. Guess, 41 Ga.App. 697, 154 S.E. 301.

■ In the case at bar the lay witnesses were dairymen experienced in the handling of cattle. They bought cotton seed meal processed by defendant that was off color and had a burnt odor, they fed this meal to their cattle in the same quantity and in the same feed mixture they had been feeding all the while. Prior to feeding this meal the cows were healthy but after eating the meal they became ill and manifested particular

symptoms, and the cattle which did not eat any of the meal did not develop such symptoms. When the feeding of this off color meal was discontinued and other meal substituted therefor in the same formula none of their cattle thereafter suffered a similar illness. These are some of the facts and circumstances upon which the lay witnesses based their opinions. We think that the court below properly ruled that the opinion evidence was admissible. Fudge v. State, 190 Ga. 340, 9 S.E.2d 259.

■ As to the expert witnesses one was the veterinary who treated appellees' sick cattle, another was a chemist who made a chemical, biological and bacteriological test of the meal in question and the third was the chief veterinary of the Georgia Department of Agriculture. Section 38–1710, Ga.Code Ann. provides: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proven by other witnesses." There is no contention here that the witnesses failed to qualify as experts and we think their opinion testimony was admissible. All witnesses, expert and lay were men of experience in the field of science or skill or trade and we think the jury was authorized to conclude that these witnesses knew better than anyone else what caused the illness and death of appellees' cattle. Great Atlantic & Pacific Tea Co. v. Dupee, 71 Ga.App. 148, 30 S.E.2d 365.

■ In further support of its contention that it was entitled to a directed verdict defendant urges upon us the proposition that even if the opinion evidence was admissible, its weight was not sufficient to offset the positive and undisputed facts that the cotton seed meal did not contain any poison or any other ingredient harmful to livestock. Defendant insists that it proved by the State Chemist, his assistants and others who made the divers chemical and biological analyses and reports and certificates which were introduced in evidence as exhibits that the cotton seed meal in question contained no poison or harmful ingredients.

On the basis of this premise it is argued that we should give effect to § 42–212, Ga.Code Ann. supra, and conclude that the findings of these state officials are, as a matter of law, more convincing than opinion evidence, and as between the two there is no legitimate basis for a choice on the part of the jury.

We think this contention on the part of defendant completely overlooks the evidence which was adduced on behalf of appellees. The reports and certificates of the State Chemists and others upon which appellant relies do not purport to be all inclusive but simply reflect the various chemical and biological analyses made for the purpose of detecting the presence or absence of the various substances or chemicals referred to in the reports. While it is true that the chemists did testify that their reports or analyses showed the presence of no ingredient harmful to livestock it is equally and significantly true that in none of these reports or analyses was there any bacteriological analysis made.

In the report of the State Chemist dated March 6, 1952, under the heading "remarks" there appears this statement: "Suspected toxicity being investigated further." At the insistence of the State Chemist two samples of the damaged cotton seed meal were shipped to one Younger, of Scientific Associates, St. Louis, Missouri, a recognized chemical and bacteriological expert to be analyzed for "presence of toxic principles". Younger made a chemical, biological and bacteriological analysis of the samples furnished and his report was filed as an exhibit in the case. He also testified as a witness for appellees at the trial. Younger's report reveals that his analysis showed that the bacteria in the meal consisted predominantly of spore formers and gram negative gas formers and that the meal had a bacteria count of 620,000 per gram as compared to a count of only 80,000 per gram found in cotton seed meal purchased on the open market. And that the feeding of cotton seed meal with a high bacterial count can upset the normal digestive processes in the complex digestive system of the cow and bring about

the disastrous results observed. It would serve no useful purpose to detail the findings and conclusions of this expert witness. Sufficient has been said to demonstrate that he was of opinion that the meal contained harmful bacteria and he made this plain to the jury for in answer to a hypothetical question detailing the proven facts in the case his response was that the meal was the cause of the illness and deaths of the cattle involved.

We conclude there was legal and sufficient evidence from which the jury were authorized to find that appellant was negligent in processing and manufacturing cotton seed meal from damaged cotton seed, and in misbranding and selling such meal to the public and to appellees in particular as prime wholesome cotton seed meal, when in fact it was low quality meal unfit for animal consumption in that it contained harmful bacteria which when consumed caused the illness and death of their cattle.

We have carefully considered appellant's other assignments of error and these present no cause for reversal. The judgment appealed from is therefore affirmed.

Affirmed.