**M. H. HOGAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20490.**

United States Court of Appeals
Fifth Circuit.

Nov. 26, 1963.

T. Baldwin Martin, Jr., T. Baldwin Martin, Macon, Ga., Martin, Snow, Grant & Napier, Macon, Ga., of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., Savannah, Ga., Melva M. Graney and Alan D. Pekelner, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Hogan brought suit against the United States seeking to recover taxes, penalties and interest theretofore paid which he contended were illegally assessed and collected. Jurisdiction is based on Title 28 U.S.C.A. § 1346(a) (1). The assessment was for excise taxes allegedly due on amounts paid for the transportation of property over a period of years under § 3475(a) of the Internal Revenue Code of 1939, and § 4271(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4271 (a).[1]

Section 3475(a) of the 1939 Code lays the tax only on amounts paid to a person engaged in the business of transporting property for hire. This provision or exemption is carried forward in the 1954 Code. 26 U.S.C.A. § 4272. The sole assignment of error turns on whether there was sufficient evidence to warrant submission to the jury of the question of whether Hogan was engaged in the business of transporting property for hire under these statutes. The District Court directed a verdict in favor of the United States at the close of appellant's case.

█ Our review of this question must be in the light of the well established rule set out in Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 49 A.L.R.2d 924, that:

"On a motion for a directed verdict, it is the duty of the court to accept as true all the facts which the evidence tends to prove, and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury."

See also Turner v. Atlantic Coast Line R. Co., 5 Cir., 1961, 292 F.2d 586; 2B Barron and Holtzoff (Wright Ed.), Federal Practice and Procedure, § 1075; and 5 Moore's Federal Practice, §§ 50–50.02 (2d ed.).

█ And it is well to note that the determination under this test does not turn on whether one side or the other has the better of the case, but whether there is any substantial evidence which would support a verdict, and a mere scintilla of evidence is not enough to require submission to the jury. Rutherford v. Illinois Cent. R. Co., 5 Cir., 1960, 276 F. 2d 330, rehearing denied, 278 F.2d 310, cert. den., 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261; Reuter v. Eastern Airlines, 5 Cir., 1955, 226 F.2d 443; White v. New York Life Insurance Company, 5 Cir., 1944, 145 F.2d 504.

The evidence in this case showed, or tended to show by fair inferences the following when considered in a light most favorable to Hogan against whom the verdict was directed. He was a commission buyer for Swift and Company at its Moultrie, Georgia plant, and for White Provision Company, a subsidiary of Swift, at its Atlanta, Georgia plant. He also purchased livestock for other meat packers. He resided in Dublin, Georgia and entered the livestock business in the early thirties. His *modus operandi* in connection with other packers was not put in evidence although it is clear that he purchased for or sold to others on a scale similar to his dealings with Swift,

---

1. The penalties arose under § 3612 of the 1939 Code, and § 6651 of the 1954 Code, 26 U.S.C.A. § 6651, for failure to make returns.

and hauled livestock to their places of operation on his trucks.

In the early years the livestock was moved by train but later, beginning in 1936 or 1937, Swift and White paid Hogan to transport its purchases by truck and he in turn hired a trucker out of payments made to him. This practice continued to the year 1944, the year the tax in question was imposed by statute, when the trucker for Hogan was called into the military service, and Hogan purchased trucks of his own. He obtained a certificate of public convenience and necessity from the Georgia Public Service Commission but never filed a tariff, and registered annually only three or four out of the total of eighteen trucks and trailers he finally acquired over the years. His certificate as a carrier was limited to hauling livestock. He obtained and carried carrier's cargo insurance. The years in question begin with the commencement of his hauling operation in 1944 and continue through 1958 when the statute imposing the tax was repealed.

Swift and White paid Hogan a commission of ten cents per hundredweight on purchases from him, plus fifty cents per hundredweight in some instances and forty cents per hundredweight in other instances for transportation depending on distance. With some specified exceptions, Hogan purchased the livestock with his own funds and was paid by Swift and White upon their purchase from him. He was responsible for losses in weight and grade between purchase and sale, and for losses occasioned by death, disease or damage during his ownership. The evidence showed losses sustained by him in these respects save by reason of death. Hogan owned a farm on which he fed out cattle to be later sold to Swift, and was not paid the commission or transportation charge on sales of these cattle. However, the testimony was that they were sold on a delivered basis.

His payments for transportation from Swift and White together averaged approximately $40,000 per year. There is no evidence as to what his payments were from other packers, but it is clear that they were considerable and that he was trucking on a large scale. For example, his truck drivers' salaries in 1957 were $121,295.80 and $77,584.02 in 1958. Expenditures for gas, oil and repairs exceeded these amounts.

His payments from Swift and White on each sale was in the form of two checks, one for transportation and the other for the cattle plus the commission. From the very beginning Swift and White included an additional three percent on the transportation payments to cover the transportation tax. The evidence was that Hogan advised those with whom he had contact as representatives of Swift and White that no tax was due since he was transporting his own cattle but that they continued to pay it over the years until it finally totalled $17,-399.70. They were to give his advice to their superiors, but nothing further was heard from them in this regard, and he took no further action. These payments were included in his gross income and income tax was paid thereon. He failed to remit any portion of the sums collected as transportation tax. No transportation tax was collected by Hogan from any other packer, and there is no indication that any claim has been or is being made by the United States for tax with respect to those transactions.

The fact that Swift and White had paid Hogan the tax weighed heavily on the decision of the trial court. It was a relevant and a spectacular fact but not a conclusive one. The equities of that situation lie between Swift and White on the one hand, and Hogan on the other if the tax is not due.[2] Thus, putting aside the windfall to Hogan from these payments, the controversy lies between Hogan and the United States, and the

---

2. It was stipulated that Swift, for itself and apparently for White, had consented to the filing of the suit for refund as is required by § 3471 of the Internal

Revenue Code of 1939, and § 6415 of the 1954 Code, 26 U.S.C.A. § 6415, and that question is not in issue.

nub of the controversy is whether Hogan was engaged in the business of transporting property for hire. His simple answer is that in the Swift and White transactions he was transporting his own property, and that as to it he was not engaged in the business of transportation for hire.

 The evidence that Hogan paid for the cattle in question with his own funds, suffered such losses as might be incurred from casualty or disease prior to the sale, and also for errors in grade or for loss in weight, although not the uniform practice, appeared to be the general method of doing business. Hogan had the burden of proof but the jury might have drawn the inference that he was transporting his own property and not that of Swift, and that it was not transportation for hire within the meaning of the statute. This evidence was more than a scintilla. It was of such substantiality as to require submission to the jury. Hogan had just rested his case and the United States had not offered any contrary proof. Of course, we have no way of knowing what the final proof picture will be but it does appear even at the juncture where the verdict was directed that the weight of the evidence was with the United States, considering the other facts coupled with the overall fact that the trucking business was by far the larger of the businesses of Hogan when compared with the livestock business. What may have started as a livestock business, and to preserve which it may have been necessary to enter the trucking business, had over the years become smaller in gross income. No evidence was offered as to the net profits, and thus no comparison could be drawn between the profits from the cattle business contrasted with those of the truck business.

The cases arising under the Transportation Act, Title 49 U.S.C.A. § 303(a) (14), (15) and (17), to determine whether carriers are private, or subject to the certificate requirements of the Interstate Commerce Commission as being carriers for hire are analogous, Brooks Transportation Company v. United States, D.C. E.D.Va., (3-Judge Court), 1950, 93 F. Supp. 517; aff'd mem., 1951, 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668; and see Church Point Wholesale Bev. Co. v. United States, D.C.W.D.La., (3-Judge Court), 1961, 200 F.Supp. 508, pointing out that the rule of Brooks had been adopted by the 1958 amendment to § 203 (c) of the Transportation Act, Title 49 U.S.C.A. § 303(c), wherein it was provided that no person might engage in any for-hire transportation in Interstate or Foreign Commerce without a certificate or permit issued by the Interstate Commerce Commission "unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person."[3] Testing the proof here by that rule, Hogan made out a prima facie case. It will stand or fall, depending on whether the primary business of Hogan is the buying and selling of livestock, which he transports in furtherance of that business, and the transportation is merely incidental thereto. In this connection, compare A. W. Stickle Co. v. Interstate Commerce Commission, 10 Cir., 1942, 128 F.2d 155, where the finding of the Commission that the primary business of the lumber broker was the transportation of lumber was sustained, one judge dissenting. Cert. den., 317 U.S. 707, 63 S.Ct. 154, 87 L.Ed. 564.

The inferences to be drawn from the evidence adduced was for the jury, and reasonable men in the impartial exercise

3. In the Church Point Wholesale Beverage case, supra, the court sustained the position of the Interstate Commerce Commission that Church Point was engaged in for-hire transportation of sugar in a back haul situation even though it took title to the sugar. The sale of the sugar was prearranged by a broker. On the other hand, pointing up that such cases present fact questions, see the contrary holding in Red Ball Motor Freight, Inc. v. Shannon, D.C.W.D. Texas, (3-Judge Court), 1963, 219 F.Supp. 781, pending on appeal in Supreme Court, 375 U.S. 901, 84 S.Ct. 197, 11 L.Ed.2d 142, where the back haul was also of sugar.

**280**

of their judgment with respect to it could have reached different conclusions as to the central issue: Was Hogan engaged in the business of transporting property for hire? To direct a verdict under these facts amounted to a deprivation of the right of Hogan to have the facts determined by the jury, and constituted error. The trial judge recognized that it was a close question, and no doubt the scales were tipped in favor of the United States by the fact that Swift and White paid the tax to Hogan, and Hogan over the course of the years never sought to return it, or to pay it to the government. That he should have done one or the other, or escrowed the amounts until the question could be determined does not, in light of the other facts presented, end the matter. Hogan was entitled to his day before the jury as the record stood, and the judgment appealed from must be reversed so that he may have it.

In doing so, we think the following caveat is appropriate. We do not predict now what the outcome of the retrial should, or may, be. All we hold is that the evidence was sufficient to take the case to the jury at the time the verdict was directed. The evidence on retrial may or may not be different. It may or may not be sufficient, on the next trial, either when Hogan rests his case, or at the conclusion of the trial to take the case to the jury, but the sufficiency is a matter for the initial determination of the trial judge. Duke v. Sun Oil Company, 5 Cir., 1963, 320 F.2d 853.

Reversed and remanded for further proceedings not inconsistent herewith.

TUTTLE, Chief Judge (concurring in part and dissenting in part).

I concur in part and dissent in part from the opinion of the majority. It appears clear from the record that the trial court directed a verdict in favor of the United States solely because of the fact that Hogan had received sums purporting to represent the 3% transportation tax and had failed to pay this amount over to the Government. As pointed out in the opinion, this, of course, is not a controlling factor. I, therefore, agree that the judgment should be vacated and the case remanded to the trial court for its further consideration of the Government's motion for directed verdict. That determination should be made by the trial court on the basis of the record as it stands. While I am persuaded that the trial court should, on the record as made, conclude that the plaintiff had failed to carry his burden of proof, in that the record clearly demonstrates that Hogan was engaged in the transportation of cattle for hire, but completely failed to show that such activity was subordinate to another business in which he was primarily engaged, nevertheless, I think such determination is one that should first be made by the trial court. I would vacate the judgment and remand the case to the trial court with the direction that it then determine whether the record, as it stood upon the conclusion of the plaintiff's case, was sufficient to warrant the court's sending it to a jury.