**Thomas J. RICKETSON, Appellant,**

v.

**SEABOARD AIRLINE RAILROAD COMPANY, Appellee.**

No. 25961.

United States Court of Appeals Fifth Circuit.

Nov. 15, 1968.

Rehearing Denied Dec. 5, 1968.

William Murrell, Jr., Orlando, Fla., Paul Kickliter, Tampa, Fla., for appellant.

Ronald D. McCall, John W. Boult, Tampa, Fla., Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

**AINSWORTH, Circuit Judge:**

In this Florida diversity personal injury suit the District Judge directed a verdict for defendant at the close of all of the evidence. We must determine whether the evidence was sufficient to require submission to the jury for its verdict. Being satisfied that reasonable men could differ as to the conclusions to be reached on the facts and that the case therefore should have been sent to the jury for its ultimate verdict, we reverse and remand for a new trial.

Thomas J. Ricketson, appellant, employed as a bulldozer operator by Blocks Terminal on a dock owned and maintained by defendant Seaboard Airline Railroad Company, was injured when the bulldozer which he was operating slipped from the dock and fell into Tampa Bay, Florida, on February 23, 1966. His complaint alleged negligence by the defendant in maintaining and operating unsafe premises, which negligence proximately caused the accident. Defendant denied negligence and asserted the affirmative defenses of contributory negligence and assumption of risk.

The evidence shows that plaintiff's employer had contracted with defendant for the spreading of phosphate ore in the hold of the SS MANILA which was being loaded at defendant's dock on the day of the accident. Plaintiff's job was to load and level the phosphate in the hold of the ship. The dock is approximately six hundred feet long, and three entrances, one at each end and one in the middle, lead to it. The accident occurred at approximately the middle of the dock. At one side of the dock is an elevator containing the ore to be loaded, supported by steel stanchions which are eight to ten feet apart. In order for a bulldozer to traverse the dock, it is necessary that it be driven around the stanchions. This is a difficult operation. The stanchions are wider at the bottom than at the top. Nine inches of the sixteen-inch tractor tread must hang off the dock when the tractor moves around the stanchions. The overall width of the bulldozer and its blade is six feet, ten and a half inches. The dock is approximately five feet, one-half inch wide. In normal operation, the cleats of the bulldozer hang over the outside of the dock six or seven inches. By continual contact with ships berthed for loading the dock has become progressively narrow. Recoil springs under the dock have dete-

riorated from corrosion. The wooden planking of the dock itself, as a result of being "chewed up" from the steel cleats of bulldozers, is in need of repair. Plaintiff and other bulldozer operators had complained to his supervisor and to defendant's representative about the deteriorating condition of the dock.

On the morning of the accident it had been raining for two hours and the phosphate on the dock had become wet and slippery. Plaintiff brought his tractor to the land side of the elevator. Another bulldozer operator preceded him who continued to drive straight ahead, heading for the far entrance to the dock. Plaintiff, however, turned into the middle entrance to the dock and when he approached the place at which he was to go into the hold of the ship, he discovered that the dock had been "mashed in" to approximately three feet and it was impossible either to proceed or turn around because of the narrowness of the dock. He then attempted to back out at a slow rate. He cleared the first stanchion but when he reached the second one the tractor slipped from the dock and plunged into the bay.[1] He testified that he had never seen the dock as narrow as it was on the day of the accident. Plaintiff had not operated a bulldozer for two or three weeks prior to the accident. During that time, however, he had been handling tarpaulins on vessels at the dock

and it was necessary to traverse the dock to reach the ship.

Plaintiff had been operating a bulldozer at the same place for approximately eleven years, using the same type of tractor for approximately five years. Phosphate falls from the belt used in loading phosphate ships and plaintiff was accustomed to seeing the substance on the dock. He also knew that phosphate becomes slick after a rain which causes the bulldozer to slip. He knew that the dock would be slippery on the morning of the accident, but he did not pay too much attention to it as he had experienced slipping sensations in the past when there was a large amount of wet phosphate on the dock. He had gone forward over the same portion of the dock a few minutes before the accident.

Other witnesses testified in regard to the bad state of repair of the dock. One bulldozer operator had slipped off the dock at the same spot where plaintiff's accident occurred. One operator testified that when there was difficulty in going around the stanchions, the hook from the ship that picks up the bulldozers was used to hold the tractor while the operator went around the stanchion.

Defendant introduced a single witness, Verne Ebinger, a supervising stevedore for Blocks Terminal. He did not witness the accident but was on the scene

1. Plaintiff described the area and the operation as follows:
"Q. Mr. Ricketson, I want you to point out to the jury the location of those steel stanchions that support the elevator and the actual area that your dozers had to pass to perform your duties in the loading of the hold of the ship.
"A. All right. Here is the steel stanchion here, holding the elevator up. You have to come around on the outside to pass these things. It is impossible to go any other way. And in doing so, you have to come over all this bad part, all along the dock, to get past it. That is where the narrow places are in here. Each time the ship butts up against it, it pushes

the dock in, so the dock keeps getting narrower each time a ship ties up.
     *     *     *     *     *
"Q. Well, now, on this particular day, when you went down the ramp or runway and found it had been smashed or squashed in, as I believe you put it, and that you couldn't go across at all; what did you have to do to get out of there?
"A. I had to either back out or try to turn around on the dock. If I turned around on the dock, both ends of the tractor would be off hanging over the dock.
"Q. Over the water?
"A. Over water, yes. So it was a lot simpler just to back out."

shortly thereafter. He testified that ships coming alongside will bump, nudge or hit the dock, that this caused the indentation, and that this condition existed approximately three or four months before the accident, but that no repairs had been made during that time. Mr. Ebinger said that he had told all of the bulldozer operators that the dock had been pushed in at that point and had warned them to avoid using the center ramp. However, plaintiff and two other bulldozer operators testified that they had not been given any warning not to go on the ramp where the accident occurred.

■ The Trial Court should not direct a verdict unless both the facts and the inferences to be drawn therefrom point so strongly in favor of one party that the Court believes that reasonable men could not come to a different conclusion. See 5 Moore, Federal Practice ¶ 50.02[1], p. 2320. This standard has been expressed by this Court in various ways. In Herron v. Maryland Casualty Company, 5 Cir., 1965, 347 F.2d 357, 358, we said:

"[T]he case should be submitted to the jury if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions."

Accord, Lyle v. R. N. Adams Construction Co., 5 Cir., 1968, 402 F.2d 323; McPherson v. Tamiami Trail Tours, Inc., 5 Cir., 1967, 383 F.2d 527; Mixon v. Atlantic Coast Line Railroad Company, 5 Cir., 1966, 370 F.2d 852; Wright, Federal Courts § 95 at 370.

In Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 116, 49 A.L.R.2d 924, we said:

"It is well settled law that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact; and that negligence and what is the proximate cause of damages are questions of fact to be properly submitted to and determined by jurors from a consideration of all the attending facts and circumstances."

■ In General Portland Cement Company v. Walker, 5 Cir., 1961, 293 F. 2d 294, this test is succinctly expressed:

"A trial judge takes the decision away from the jury when reasonable men cannot differ—then and then only."[2]

In directing a verdict for defendant, the District Judge made the following comments:

"Upon consideration, I found that, after giving full weight and credence —that is, believability—to all of the evidence, it was apparent from the testimony of Mr. Ricketson and his witnesses that there were obvious dangerous conditions on the dock which had continued for a long period of time, which Mr. Ricketson assumed by working there; and that for that reason and others, I was required under the law to direct a verdict for the Defendant; that is, the railroad, and against the Plaintiff."

■ We cannot ascertain from the remarks of the District Judge whether he directed a verdict upon the theory of plaintiff's contributory negligence or his assumption of risk, or both.[3] Neverthe-

2. See also Isaacs v. American Petrofina, 5 Cir., 1966, 368 F.2d 193; Wright, Federal Courts § 95, p. 370. It is noted that the law of Florida is to the same effect. Nelson v. Ziegler, Fla., 1956, 89 So.2d 780.

3. In cases where the defenses of assumption of risk and contributory negligence overlap, it is immaterial which label we attach to them. See Gavel v. Girton, Fla.App., 1966, 183 So.2d 10. "The doc-

trine of assumption of risk is only an engraftment upon the well established law applicable to contributory negligence." Martin v. Plymouth Cordage Company, Fla.App., 1968, 209 So.2d 481. There is little distinction between the two defenses. Both partake of exposure by plaintiff to danger, knowledge of which is attributed to plaintiff; actual knowledge in assumption of risk, and at least constructive knowledge in contributory negligence. As said by the Supreme

less it is evident that the Trial Judge attributed to plaintiff knowledge—actual or constructive—of certain dangerous conditions which brought about the unfortunate mishap. While there is a reasonable basis for concluding that plaintiff knew that the dock would be slippery because of the wet phosphate, there was a direct conflict in the testimony as to whether plaintiff had been warned or was aware of the indentation in the dock which caused him to back up, and which in turn apparently caused the bulldozer and its driver to plunge into Tampa Bay. The issue of credibility is one for jury determination. Isaacs v. American Petrofina, 5 Cir., 1966, 368 F.2d 193; American Fidelity & Casualty Company v. Drexler, 5 Cir., 1955, 220 F.2d 930. The jury had the right to believe either version of the account. Whether or not plaintiff had constructive notice of the indentation in the dock and whether he knew that such a condition would have made the area impassable were also questions of fact for the jury to determine. Another important factual issue for jury determination was whether the duty owed by defendant to plaintiff to provide a safe working area had been satisfied. Plaintiff introduced uncontradicted evidence of acts by defendant from which the jury reasonably could have inferred actionable negligence, resulting in a verdict for plaintiff in the absence of contributory negligence or assumption of risk, such as the deterioration of the wooden planking on the dock, failure of the defendant to repair that condition and the "pushed-in" condition of the dock despite its existence for two or three months prior to the accident, and maintenance by the defendant of a dock narrower than the width of the bulldozers which operated over it.

 As this Court has said many times, issues of negligence are questions proper for jury determination. See Stace v. Watson, 5 Cir., 1963, 316 F.2d 715; R. J. Reynolds Tobacco Company v. Hudson, 5 Cir., 1963, 314 F.2d 776; Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 49 A.L.R.2d 924.

Under all of the foregoing circumstances we are of the opinion that the District Court incorrectly applied the test for directing a verdict.

Reversed and remanded for a new trial.

Court of Florida in Bartholf v. Baker, Fla., 1954, 71 So.2d 480, and reiterated in Martin v. Plymouth Cordage Company, supra at 483:

"Voluntary exposure is the bedrock upon which the doctrine of assumed risk rests. Appreciation of the danger is an essential to the defense of assumption of risk, or of contributory negligence, as is knowledge of the condition which creates the peril."

Under Florida law contributory negligence alone is no bar to recovery; the negligence must be a proximate cause of the accident. Bessett v. Hackett, Fla., 1953, 66 So.2d 694; Kuhn v. Telford, Fla.App., 1959, 115 So.2d 36; Nelson v. Ziegler, Fla., 1956, 89 So.2d 780.