RAWLS, Judge.
Appellant-defendant in an action on an account has appealed a judgment for the plaintiff setting aside a jury verdict for defendant on her counterclaim.
The basic point on appeal is: Did the trial court commit reversible error in entering an order setting aside the verdict and judgment on the counterclaim and entering judgment in accordance with plaintiff’s motion for directed verdict on the defense of assumption of risk? It is our conclusion that the trial court’s action was correct, and we affirm.
Plaintiff’s amended complaint alleged that the defendant owed it $310.38 for goods sold and delivered, as per invoices attached. Defendant, in her answer, denied the material allegations and counterclaimed for damages against the plaintiff in the amount of $5,-000.00. By her counterclaim, defendant alleged inter alia: she had ordered from the plaintiff six bags of insecticide material known as 3-5-10; she informed plaintiff the said material was intended to be used on certain plants being grown by her, and the insecticide should not contain any sulphur because it was harmful to ferns; plaintiff wrongfully sold and delivered to her two bags of insecticide material known as 3-5-40 which contained a sulphur chemical, knowing that the use of same would damage or destroy her plants; and she used the 3 — 5—40 material on her fern plants, not knowing that said insecticide contained a sulphur chemical and not knowing that said material would damage or destroy fern plants.
The evidence at the trial conclusively supports the judgment entered.
Mrs. Martin testified that she was experienced in fern horticulture, and the book she had written about this subject caused a sensation and sold throughout the United States as well as in foreign countries. She *482 further testified that in the fall of 1963, she ordered one sack of 3-10[1] cotton dust from :a hardware store; they sent the “wrong kind”; she used a little of this material, and it killed her fern. An employee, Hart-ley, testified that the sack of insecticide received from the hardware store was 3-5-40, and this was the reason he knew it would kill fern. Shortly after using a part of the sack of insecticide purchased from the hardware store, Mrs. Martin called Wilson & Toomer, ordered six bags of 3-10, informed them of the damage suffered as a result of using the insecticide purchased from the hardware store, and requested that they not send anything with sulphur in it. As a result of this conversation, Wilson & Toomer sent a representative to the fernery who advised Mrs. Martin not to use any of its cotton dust on her fern plants. Mrs. Martin’s response to this advice was “Yes, but I said that you don’t need to advise me. The State Plant Board already advised me that the only thing that will kill this was sulphur, and 3-10 is not dangerous to fern * * * no matter what Wison & Toomer advises, they don’t advise you. The State Board does.”
Six bags of Wilson & Toomer insecticide were delivered to Mrs. Martin’s fernery around November 29, 1963, and stored on her premises for some three months prior to use. Mrs. Martin testified that two of the six bags contained “3-5^10” ingredients, rather than “3-10” as she ordered. Exhibits contained in this record reflect that bold letters on the face of the bags containing the insecticide gave the analysis of the contents of each bag; i. e., £i3 — 5—40 COTTON DUST” in letters approximately three-fourths of an inch high and parenthetically underneath the letters (one-fourth of an inch high) “(BHC-DDT-SULPHUR)”. Printed upon the bag was a further label: “ACTIVE INGREDIENTS : * * * Sulphur as S * * * 40.0% .”[2] Mrs. Martin positively testified that she did not examine the printed analysis on the bags prior to use, although she had previously stated that an acre of fern was worth $10,000. Similarly, her employee Hartley, who applied the insecticide, testified that prior to using, he did not examine the label of the insecticide bags. Upon being shown a bag, he was asked, “Do you recognize it as being a 3-5-40 bag?” He replied, “I see it is 3-5-40, yes, sir.” He further testified that he had noticed 3-10 on some of the bags, but hadn’t looked at all of them. When asked, “Did you ever see one labelled with 3-5-40?”, he answered, “Not until after we had used some of it”, even though he had a bag sitting before him when he dipped the dust out, and he was aware of the danger of using 3-5-40 on the ferns.
Plaintiff’s motion to set aside verdict and judgment included numerous grounds, among which were the following:
“5. It affirmatively appears from all of the evidence in the case, including defendant’s own testimony, that the defendant as a matter of law, assumed the risk of any injury to her property and resulting damage.
“6. That plaintiff, as one of its defenses to defendant’s counterclaim, affirmatively pleaded the defense of assumption of risk on the part of the defendant and all of the matters of fact necessary to sustain such defense of assumption of risk; and the defendant, by her own testimony, has proven the truth of each and every allegation of such affirmative defense so that defendant, as a matter of law, assumed the risk of the alleged injuries and resulting damages.
“7. It affirmatively appears from all of the evidence in the case, including defendant’s own testimony, that the de *483 fendant, as a matter of law, was guilty of contributory negligence.
“8. The plaintiff, as one of its defenses to defendant’s counterclaim, affirmatively pleaded the defense of contributory negligence on the part of the defendant and all of the matters of fact necessary to establish such defense of contributory negligence; and the defendant, by her own testimony, has proven the truth of each and every allegation of plaintiff’s defense of contributory negligence so that defendant, as a matter of law, was guilty of negligence which proximately contributed to her own alleged injury and resulting damage.”
Although the other grounds concerning the sufficiency of the evidence as to liability and damages and the manifest weight of the evidence and justice of the cause appear to have merit, it is not necessary to delve into these matters in view of our conclusion that those grounds concerning the doctrine of assumption of risk and contributory negligence as a matter of law are meritorious.
The four grounds pertaining to assumption of risk and contributory negligence are considered as one point for they all go to the question of contributory negligence as a matter of law. The doctrine of assumption of risk is only an engraftment upon the well established law applicable to contributory negligence.
We are not here concerned with the mislabelling of insecticide ingredients. Like the jury and the trial judge, we are confronted with an uncontradicted record which reflects that the employer and the employee failed to examine the bold label reflecting that the contents of the insecticide bags contained a substantial quantity of sulphur. Further, the record is clear and uncontradicted that this manufacturer warned the consumer that its product was not satisfactory for her purposes. This evidence is conclusive proof by the claimant of contributory negligence as a matter of law.
The applicable law is elemental. In Bartholf v. Baker,[3] the Supreme Court of Florida in discussing the defense of assumption of risk said:
“Voluntary exposure is the bedrock upon which the doctrine of assumed risk rests. Appreciation of the danger is an essential to the defense of assumption of risk, or of contributory negligence, as is knowledge of the condition which creates the peril.”
We concur with the trial judge’s order in which he found:
“ * * * the court felt during the trial of this cause, and having re-read the testimony of the defendant still feels that it is beyond cavil that the defendant assumed the risk in this case. The defendant herself testified that agents of the plaintiff warned her, before she used the plaintiff’s cotton dust on her fern plants, that she should not use any cotton dust produced by the plaintiff on her fern plants, because it might result in damage to the fern, and that she chose nevertheless to abide by contrary advice given her by others. It seems to the court incredible that a producer of a product, after warning a prospective user of that product not to use that product, because damage might result, could be held responsible in damages to a purchaser who deliberately chose to go ahead and use the product.”
Affirmed.
CARROLL, DONALD K., Acting C. J., and JOHNSON, J., concur.

. Although the counterclaim alleged that defendant ordered 3-5-10 insecticide, her testimony was that 3-10 insecticide was ordered.

. Plaintiff’s Exhibit $1 is an empty 50-lb. insecticide bag, and printed upon the face of same in bold letters is: “3-10 COTTON DUST (BHC-DDT).”

. Bartholf v. Baker, 71 So.2d 480 (Fla.1954).